UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, SENIOR JUDGE

———————————————————————
)
UNITED STATES,                                      )
     Plaintiff,                                   )
                                                    )
     v.                                           )   Consol. Court No. 11-00388
                                                    )
AEGIS SECURITY INSURANCE CO.,                       )
TRICOTS LIESSE 1983, INC.,                          )
     Defendants,                                  )
                                                    )
     and                                          )
                                                    )
TRICOTS LIESSE 1983, INC.,                          )
     Third-party defendant.                       )
———————————————————————)

## **ORDER**

Upon consideration of Defendant, Tricots Liesse, 1983, Inc.'s, Motion to Dismiss Ct.

No. 16-00066 pursuant to USCIT Rule 12(b)(1) and 12(b)(6); upon other papers and proceedings

had herein; upon any response by Plaintiffs thereto; and upon due deliberation, it is hereby

ORDERED that Defendant's Motion be, and hereby is granted; and it is further

ORDERED that Ct. No. 16-0066 is hereby dismissed.

Dated: _____         _____

     New York, New York                         Senior Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE RICHARD K. EATON, SENIOR JUDGE

| | |
|---|---|
| UNITED STATES, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Consol. Court No. 11-00388 |
| | ) |
| | )     PUBLIC VERSION |
| AEGIS SECURITY INSURANCE CO., | ) |
| TRICOTS LIESSE 1983, INC., | ) |
|     Defendants, | ) |
| | ) |
|     and | ) |
| | ) |
| TRICOTS LIESSE 1983, INC., | ) |
|     Third-party defendant. | ) |

## DEFENDANT TRICOTS LIESSE 1983, INC.'S MOTION TO DISMISS

Defendant, Tricots Liesse 1983, Inc., hereby moves pursuant to USCIT Rules 12(b)(1) and 12(b)(6) for an Order dismissing the Complaint in Ct. No. 16-00066 on the grounds that the court lacks subject matter jurisdiction by virtue of U.S. Customs and Border Protection's (CBP or Customs) failure to adhere to the statutorily mandated administrative procedures that are the prerequisites for the initiation of penalty actions under 19 U.S.C. § 1592; and for failure to state a claim upon which relief can be granted. The reasons for this Motion are set forth more fully in the attached memorandum.

Pursuant to USCIT Rule 7 of this Court, Defendant Tricots Liesse 1983, Inc. respectfully request that the court allow oral hearing on its Motion in this matter.

Respectfully Submitted,

November 28, 2016
/s/ FRANCES P. HADFIELD

John Brew
Frances Hadfield
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Tel.: (212) 803-4040
FHadfield@crowell.com

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____

|  |  |
|---|---|
| UNITED STATES, | ) |
|     Plaintiff, | ) |
|  | ) |
|     v. | ) Consol. Court No. 11-00388 |
|  | ) |
|  | )    PUBLIC VERSION |
| AEGIS SECURITY INSURANCE CO., | ) |
| TRICOTS LIESSE 1983, INC., | ) |
|     Defendants, | ) |
|  | ) |
|     and | ) |
|  | ) |
| TRICOTS LIESSE 1983, INC., | ) |
|     Third-party defendant. | ) |

_____

---

**MEMORANDUM IN SUPPORT OF
DEFENDANT TRICOTS LIESSE 1983, INC.'S
MOTION TO DISMISS**

---

Dated:  November 28, 2016         By:   John Brew
                                      Frances Hadfield
                                      Crowell & Moring
                                      590 Madison Avenue, 20th Floor
                                      New York, NY 10022
                                      Tel.: (212) 803-4040
                                      FHadfield@crowell.com

                                      Counsel to Tricots Liesse 1983, Inc.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

I. INTRODUCTION ................................................................................................... 1

II. STATEMENT OF FACTS ..................................................................................... 2

    A. Description of Subject Imports ....................................................................... 2

    B. Tricot's NAFTA Correction and Customs' Pre-Penalty Statement............................. 3

    C. Canada's TPL Certifications and Customs Penalty Notice ......................................... 5

    D. Customs Failed to Provide the Requested Oral Presentation Prior to Issuing its Penalty Decision and the Complaint Requests that this Court Impose Penalties Double those Demanded in the Final Administrative Determination.......................... 6

III. ARGUMENT............................................................................................................ 7

    A. Standard of Review........................................................................................... 7

    B. The Court Lacks Jurisdiction Because Plaintiff Failed to Exhaust Administrative Remedies........................................................................................................... 8

        1. Customs was required to Provide Defendant with an Opportunity to Make an Oral Presentation.............................................................................. 9

        2. Customs Willfully Refused to Allow Defendant to Make an Oral Presentation .................................................................................................. 11

        3. Customs' Failure to Exhaust Administrative Remedies Prevented Full Review of Substantive Information ..................................................... 13

        4. Customs Failed to Exhaust Administrative Remedies and Perfect its Penalty Demand against Tricots Because the Amount Sought in this Case is Double Customs' Final Administrative Penalty Demand ........................................... 18

        5. The Limited Exceptions to Customs' Failure to Exhaust Administrative Remedies Do Not Apply ................................................................ 19

    C. The Complaint must be Dismissed for Failure to State a Cause of Action Upon which Relief May be Granted............................................................................. 23

IV. CONCLUSION........................................................................................................ 24

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................. 8

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) ...................................................................... 7

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................................................... 8

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) .......................................................... 8

*Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993) ........................... 7, 8

*Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007) ................................... 20

*Engage Learning, Inc. v. Salazaar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011) ................................. 8

*Everflora Miami, Inc., v. United States*, 19 C.I.T. 485 (1995) .................................................... 7

*Ford Motor Co. v. United States*, 635 F.3d 550, 557 (Fed. Cir. 2011) ....................................... 14

*Gibbs v. Buck*, 307 U.S. 66, 71 (1939) ........................................................................................ 7

*Heraeus-Amersil, Inc., v. United States,* 600 F. Supp. 221 (CIT 1984) ..................................... 16

*LDA Incorporado v. United States*, 978 F. Supp. 2d 1359, 1363 (CIT 2014) ............................. 7

*Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006) ........................ 7

*United States v. Nitek Elecs., Inc.*, 844 F. Supp. 2d 1298, 1302 (CIT 2012) .................... 8, 19, 23

*United States v. Priority Products, Inc.*, 615 F. Supp. 591 (CIT 1985), aff'd 793 F.2d 296 (Fed.
    Cir. 1986) .......................................................................................................................... 21

*United States v. Rotek, Inc.*, 22 C.I.T. 503, 510 (1998) ............................................................. 19

*United States v. UPS Customhouse Brokerage, Inc.*, 686 F. Supp. 2d 1337, 1346 (2010) .......... 20

*Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ............................................................................. 20

**Statutes**

19 U.S.C. § 1520(d) ................................................................................................................... 14

19 U.S.C. § 1592 .......................................................................................................................... 1

19 U.S.C. § 1592(b)(1)(A) .......................................................................................... 9

19 U.S.C. § 1592(b)(2) .............................................................................................. 9

19 U.S.C. § 1617 ....................................................................................................... 4

28 U.S.C. § 1582 ....................................................................................................... 1

5 U.S.C. § 706 ........................................................................................................... 1

## Rules

USCIT Rule 12(b)(1) ............................................................................................ 1, 7

USCIT Rule 12(b)(6) ................................................................................................. 1

## Regulations

19 C.F.R § 162.78 ................................................................................................... 10

19 C.F.R § 171.3 ..................................................................................................... 10

19 C.F.R. § 162.77 .................................................................................................. 10

19 C.F.R. § 181.21(b) ............................................................................................. 14

19 C.F.R. § 181.82 .................................................................................................. 14

19 C.F.R. § 24.23(b) ................................................................................................. 3

## Other Authorities

13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3522 (3d ed.

2011) ...................................................................................................................... 7

Customs Directive No. 3550-085 ...................................................................... 14, 15

NAFTA Article 1802 ............................................................................................... 14

NAFTA, Annex 300-B, Appendix 6.B .................................................................... 3

NAFTA, Article 2003 .............................................................................................. 17

NAFTA, Article 2006 .............................................................................................. 17

S.Rep. No. 778, 95th Cong., 2d Sess. 2 (1978), *reprinted in* 1978 U.S. Code Cong. Admin. News 2211-14 ................................................................................................................... 10

**U.S. Constitution**

U.S. CONST. AMEND. V ........................................................................................................... 1

**Canadian Cases**

*Bri-Chem v. President of the Canada Border Services Agency*, AP-2014-017 ........................... 17

*Evergreen Ecological Services Inc. v. President of the Canada Border Services Agency*, AP-2014-027 ..................................................................................................................... 17

*Southern Pacific Resource Corp. v. President of the Canada Border Services Agency*, AP-2014-028 ............................................................................................................................ 17

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: HONORABLE RICHARD K. EATON, SENIOR JUDGE

_____
                                                    )
UNITED STATES,                                      )
     Plaintiff,                                   )
                                                    )
     v.                                           )     Consol. Court No. 11-00388
                                                    )
AEGIS SECURITY INSURANCE CO.,                       )
TRICOTS LIESSE 1983, INC.,                          )     PUBLIC VERSION
     Defendants,                                  )
                                                    )
     and                                          )
                                                    )
TRICOTS LIESSE 1983, INC.,                          )
     Third-party defendant.                       )
_____    )


**MEMORANDUM IN SUPPORT OF DEFENDANT TRICOTS LIESSE 1983, INC.'S
MOTION TO DISMISS**

**I.**     **INTRODUCTION**

     Defendant, Tricots Liesse 1983, Inc., ("Defendant" or "Tricots") hereby moves pursuant

to USCIT Rules 12(b)(1) and 12(b)(6) for an Order dismissing the Complaint in Ct. No. 16-

00066. Plaintiff commenced this action under 28 U.S.C. § 1582, seeking penalties for the alleged

negligent entry of goods in violation of Section 592 of the Tariff Act of 1930, as amended. 19

U.S.C. § 1592 ("Section 1592"). Plaintiff bears the burden of proving that this court has

jurisdiction and that its complaint states a claim upon which relief can be granted. This Court

does not have jurisdiction because U.S. Customs and Border Protection ("Customs") failed to

comply with the applicable statutory and regulatory administrative procedures thereby failing to

exhaust administrative remedies (28 U.S.C. § 2637), violating the Administrative Procedures Act

(5 U.S.C. § 706, "APA") and violating Tricots Liesse 1983, Inc.'s due process rights (U.S.

CONST. AMEND. V). Specifically, Customs mislead Defendant by acknowledging and

agreeing to the Defendant's statutory right to an oral presentation, but then made a final determination and filed suit without affording Defendant this right. In addition, Plaintiff's complaint seeks penalties against Defendant that are double the penalties determined to be owed in Plaintiff's final administrative determination, in violation of administrative exhaustion requirements and law. Accordingly, this Court should dismiss the Complaint against the Defendant as a matter of law.

## II.      STATEMENT OF FACTS

### A.      Description of Subject Imports

Tricots is located in Montreal, Quebec, Canada and is the last vertically integrated manufacturer of circular knitted fabric in Canada and in North America. Tricots purchases yarn and raw materials from U.S. and non-NAFTA suppliers, produces specialty knit fabrics in Canada, and then ships these intermediate materials to U.S. apparel manufacturers.

The subject imports were knitted fabrics produced by Tricots in Canada, classified under HTS Headings 6004 and 6006 and entered into the U.S. between November 9, 2005 and December 23, 2008. At the time of entry Tricots claimed the goods qualified for NAFTA duty free treatment according to the NAFTA rules of origin ("ROO"), and Tricots possessed the required NAFTA certificates of origin.[1] Ex. A. It is uncontested that *all* of the fabrics at issue in this case were manufactured in Canada. Certain fabrics imported in the subject entries were produced from non-NAFTA yarn and should have been entered duty free under the NAFTA

---

[1] The NAFTA ROO provided in relevant part that in order to qualify within Chapter 60: it required "A change to headings 6001 through 6006 from any other chapter, except from headings 5106 through 5113, chapter 52, headings 5307 through 5308, or 5310 through 5311, or chapters 54 through 55." Harmonized Tariff Schedule of the United States ("HTSUS") Supplement-1, GN 12 NAFTA, 89-89.

Tariff Preference Level ("TPL") rules rather than the NAFTA ROO.[2]  Fabric imports made

during this period for which Tricots claimed duty free NAFTA TPL treatment are not the subject

of this action.

### B.    Tricot's NAFTA Correction and Customs' Pre-Penalty Statement

On or about May 28, 2010, Tricots, through prior counsel filed a NAFTA correction and

disclosure with Customs pursuant to 19 U.S.C. § 1592(c)(5), stating that certain entries of knitted

fabric declared as NAFTA duty free under the ROO, should be correctly declared as NAFTA

duty free under TPL, and that certain entries of knitted fabric declared as NAFTA duty free

under TPL, should be correctly declared as NAFTA duty free under the ROO.  Ex. B.   Tricots

indicated that it would provide Customs full details on the incorrect claims made and tender the

correct duties and fees owed.  In order for Customs to complete a full review during the

administrative process, Tricots signed a statute of limitations ("SOL") waiver for the subject

entries on August 19, 2010, and signed two subsequent waivers in 2012 and 2013, which were

accepted by Customs. Ex. C.

On December 1, 2010, Tricots provided Customs with all suggested corrections on an

entry-by-entry basis, and calculated the duties and fees owed to be $44,599.99, representing the

MPF owed based on a change from NAFTA ROO claims to NAFTA TPL claims for entries

made between November 9, 2005 and December 23, 2008. Tricots did not provide to Customs

---

[2] See NAFTA, Annex 300-B, Appendix 6.B.  NAFTA TPL rules allow duty free treatment on
knitted fabrics produced in Canada from non-NAFTA yarns that do not meet the NAFTA ROO,
up to a certain quantity per year.  TPL limits for the subject imports have never been met and for
the subject period were between only 27 and 54 percent filled (including Tricots' TPLs).  The
Government of Canada, Department of Foreign Affairs and International Trade ("DFAIT"), has
the sole authority to issue certificates of eligibility ("certificates") for TPL for both imports into
Canada and exports to the U.S.  TPL provisions are provided for in Additional U.S. Notes 3-6
and Statistical Note 5 to Section XI of the HTS. Merchandise Processing Fees ("MPF") are owed
on NAFTA TPL imports, which are a minimum is $25.00 and at a maximum is $485.00 per
shipment.  HTSUS Section XI, Additional U.S. Note 3; 19 CFR § 24.23(b).

the entries for which it made correct NAFTA ROO claims, or entries for which NAFTA TPL was claimed upon importation. MPF was calculated based on the full value of the entry even if the entry contained in part correct NAFTA ROO claims. In its December 1, 2010 filing, Tricots finalized provided a spreadsheet listing entry details used to calculate $44,683.15 owed and indicated that it would tender this amount after Customs' review and confirmation of the same. Ex. D.

Thereafter, on May 23, 2011, Customs informed Tricots that the amount of duties and fees owed was $2,249,196.04, and demanded payment of this amount before Customs would accept Tricot's NAFTA correction and disclosure. Ex. E. Because Tricots disagreed with Customs' position as a matter of law, on June 22, 2011, Tricots filed an offer in compromise, tendering $85.199.98 with its offer, pursuant to 19 U.S.C. § 1617. Ex. F.

On September 27, 2011, Customs filed suit against one of Tricots' sureties, Aegis, seeking to recover duties on certain Tricots fabric entries made between 2005 and 2007 (which were also subject to Customs duty demand to Tricots) pursuant to 19 U.S.C. § 1592(d). Ct. No. 11-00388. Aegis subsequently impleaded Tricots.

On December 7, 2011, Customs informed Tricots that Customs was denying Tricots' NAFTA correction and disclosure and on February 16, 2012 Customs issued a pre-penalty statement to Tricots (and three individuals), in case number 2012-0712-3000022-01. Ex. G. The pre-penalty statement indicated that Tricots was negligent and proposed a monetary penalty of $2,249,196.04. The pre-penalty statement incorrectly avers that "fabric was produced with non-NAFTA yarn, making it ineligible for duty free treatment under NAFTA." Customs calculated the alleged loss of revenue using the spreadsheet Tricots provided Customs as part of Tricots' NAFTA correction, attached to the pre- penalty statement. At no time did Customs

independently review the entries, invoices, or products involved. Customs disregarded and did not inquire into the fact that certain entries contained fabric produced from U.S. origin yarn that qualified for duty free treatment under the NAFTA ROO. Exs. A and B. Tricots filed a response to CBP's pre-penalty notice on April 16, 2012. Ex.H.

### C.    Canada's TPL Certifications and Customs Penalty Notice

In 2012, while Customs was reviewing Tricots' offer in compromise and pre-penalty response, Customs requested that Tricots provide Customs with NAFTA TPL certificates . The Government of Canada, DFAIT, has the sole authority to issue TPL certificates for both U.S. imports into Canada and Canadian imports into the U.S.  When parties are making NAFTA corrections for past entries, DFAIT will issue retroactive TPL certificates, for both imports and exports. On May 2012, Tricots requested that DFAIT issue TPL certificates for the subject exports made between 2005 and 2008.  After confirming that the subject fabrics qualified for duty free treatment under the NAFTA TPL rules, DFAIT issued Tricots the TPL certificates in June and July 2012.  On or about August 9, 2012, Tricots provided the TPL certificates to Customs (and DOJ). Ex. J.

On May 9, 2013, Customs rejected Tricots' offer in compromise and issued Tricots (and two individuals) a penalty notice (Case Number 2012-071230002201). Ex. I.  Customs stated that after a review of Tricots' pre-penalty response there was no change to the pre-penalty statement (although actually one individual was removed from the penalty claim by Customs). The penalty notice demanded payment of penalty of $2,249,196.04.  The penalty notice did not inform Tricots of the opportunity to make an oral presentation.  On July 15, 2013, Tricots filed a response to the penalty notice and a second offer in compromise (tendering $160,000). Ex. J. On June 13, 2014, Customs rejected Tricots' second offer.  Ex. K.

**D.  Customs Failed to Provide the Requested Oral Presentation Prior to Issuing its Penalty Decision and the Complaint Requests that this Court Impose Penalties Double those Demanded in the Final Administrative Determination**

On September 15, 2014, Tricots (through Mr. Leahy, former counsel) requested a meeting with Customs. Ex. L (letter addressed to Ms. Cythia DeCosse, Fines Penalties & Forfeitures Officer for Customs at the Port of Champlain, New York). Tricots followed up with Customs on October 30, 2014, to confirm that Customs would meet with Tricots before issuing any decision on the penalty notice.  Ex. M. (Email from Mr. Leahy's office through Ms. Marie Vogel to Mr. Alan Cohen). In that e-mail, counsel for Tricots indicated that

> Ms. Teri Johnson, a Paralegal Specialist from Champlain, NY recently notified us that CBP rejected the Offer in Compromise and would be returning Liesse's $160,000 check. She also indicated that you were the CBP HQ penalties Branch attorney who is handling the Petition for Relief in this case.
>
> The reason for my correspondence to you is to confirm that you had received the September 15, 2014 letter from this office requesting a meeting between the principals at Liesse and the deciding officials at CBP on this matter (a copy of the letter has been attached to this email for your reference). Although the Offer in Compromised was rejected, Liesse still would like to meet with CBP pursuant to 19 CFR 171.3, before any final decision on the petition is made.

Ex. M. On October 31, 2014, Mr. Alan Cohen from CBP responded to e-mail and stated:

> Thanks Ms. Vogel and this is the first I had seen or heard about Steve's letter. In any event we were advised to hold off on petition decision, as we were informed that the issue of retroactive TPL is being litigated in the action CBP brought in the CIT against your client's surety, who impleaded your client. Under these circumstances, any meeting at this time would be premature.

Ex. M.

On or about November 21, 2014, counsel for Tricots, Mr. John Brew, spoke with Mr. Alan Cohen, Senior Attorney, U.S. Customs and Border Protection, Office of International Trade, Office of Regulations and Rulings, Penalty Branch ("ORR"). At that time, counsel discussed the status of the case and again requested a meeting with Customs. Mr. Cohen indicated during that telephone conversation that because of the pending case with the surety,

Aegis, that involved similar issues, Customs was holding the administrative proceeding against Tricots and did not agree to meet with Tricots. Ex. Q, Affidavit of J.Brew.

On November 24, 2015, despite repeated assurances that no penalty would issue and that therefore a meeting was premature – Customs issued a final penalty decision, denying Tricots' petition. Customs final penalty determination was that Tricots owed $2,249,196.04 in duties and $2,249,196.04 in penalties. Ex. N. Customs filed a complaint against Tricots on April 25, 2016, In the Complaint, Customs seeks $2,249,196.04 in duties pursuant to 19 U.S.C. § 1592(d), and $4,498,392.08 in penalties for negligence pursuant to 19 U.S.C. § 1592(c)(3).

## III.     ARGUMENT

### A.     Standard of Review

The threshold issue on appeal is whether the Court has jurisdiction to hear this case. *See Everflora Miami, Inc., v. United States*, 19 C.I.T. 485 (1995). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006); *see* 13 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3522 (3d ed. 2011). A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir. 2006).

A USCIT Rule 12(b)(1) motion to dismiss is evaluated as a factual attack on the Court's subject matter jurisdiction. *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993), and the court may consider evidence outside the pleadings in evaluating that attack. *Gibbs v. Buck*, 307 U.S. 66, 71 (1939). In deciding a USCIT R. 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, and a party challenges the factual basis underlying the pleadings, the Court accepts as true only those facts which are uncontroverted. *LDA Incorporado v. United States*, 978 F. Supp. 2d 1359, 1363 (CIT 2014); *Engage Learning, Inc. v. Salazaar*, 660 F.3d

1346, 1355 (Fed. Cir. 2011); *United States v. Nitek Elecs., Inc.*, 844 F. Supp. 2d 1298, 1302 (CIT 2012). All other facts are subject to fact-finding by the Court. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

If this Court has jurisdiction, then under Rule 12(b)(6) it must dismiss this action unless the Court confirms that the complaint contains sufficient factual matter to "state a claim to relief that is plausible on its face" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Plaintiff bears the burden of pleading the requisite facts, but the Court assumes all well pled factual allegations are true, and draws all reasonable inferences in favor of the plaintiff. *Cedars-Sinai*, 11 F.3d at 1584 n.13.

### B. The Court Lacks Jurisdiction Because Plaintiff Failed to Exhaust Administrative Remedies

This Court has exclusive jurisdiction over any action brought by the United States to recover a penalty for a violation of 19 U.S.C. § 1592. 28 U.S.C. § 1582(1). In such actions this Court "shall, where appropriate, require the exhaustion of administrative remedies." 28 U.S.C. § 2637(d). The Courts have held that because there are limited exceptions for Customs failure to exhaust administrative remedies, exhaustion is not strictly jurisdictional. *United States v. Nitek Elecs., Inc.*, Slip-Op. 2012-105, 34 Int'l Trade Rep. (BNA) 1903 (CIT Aug. 7, 2012). However, section 2637(d) "indicates a Congressional intent that absent a strong reason the court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Id.* As explained below, Congress has set forth detailed procedures that Customs must follow in order to prefect a penalty claim before Customs may seek collection of such penalty in this Court. Here,

Customs has failed to follow these procedures, failed to perfect its administrative claim, and this Court should dismiss this case.

### 1. Customs was required to Provide Defendant with an Opportunity to Make an Oral Presentation

Congress has made clear that if Customs wishes to seek civil penalties against persons in actions before this Court, Customs must follow certain procedures to guarantee the rights of importers and ensure that judicial resources are not wasted. By statute, to obtain penalties against any party Customs must first provide a pre-penalty statement to the party. This statement must include all facts and laws forming the basis of the alleged violation, the amount of the proposed penalty and notice that:

> such person shall have a reasonable opportunity to make representations, **both oral and written**, as to why a claim for a monetary penalty should not be issued in the amount stated.

19 U.S.C. § 1592(b)(1)(A) (emphasis added).

After the person subject to the pre-penalty statement is given the opportunity to make both oral and written presentations, if Customs seeks penalties against such person, then Customs must issue a penalty notice that contains all of the items required in the pre-penalty statement (including the amount of the penalty) and identifies any changes that have been made with respect to the pre-penalty statement. 19 U.S.C. § 1592(b)(2). In addition, Customs penalty statute requires that Customs provide persons a "reasonable opportunity to make both oral and written presentations" in response to the penalty notice. 19 U.S.C. § 1592(b)(2). Only after these procedures are followed may Customs issue a final penalty determination, which must provide the factual basis, legal conclusions, amount of the loss of revenue and final penalty demanded. *Id*.

To comply with these statutory requirements, Customs has issued regulations that require it to notify parties of their opportunity to make both written and oral presentations (19 C.F.R. § 162.77). In addition, Customs regulations make clear that parties have the opportunity to make an oral presentation in response to a pre-penalty statement and penalty notice. 19 C.F.R § 162.78 and 19 C.F.R § 171.3. Customs did not follow the statute or regulations in this case.

The legislative history of the Customs penalty statute underscores the importance of having a full administrative hearing, including providing penalty respondents the opportunity for both written and oral presentations. The goal of the Customs Procedural Reform and Simplification Act, which amended the Customs penalty statute in 1978, was to address the widespread criticism by the importing community that Customs lacked the necessary procedural safeguards to ensure the rights of persons are protected in penalty proceedings. The Senate Finance Committee Report explained that:

> Section 592 also lacks procedural safeguards for the alleged violator and does not permit effective judicial review. The respondent is forced to choose between accepting the mitigated administrative penalty or face a Government suit,…
>
> The risks of litigation are enormous when the initial penalty may become the final assessment. H.R. 8149, as amended by the committee, provides procedural rules for Customs consideration of penalty cases and provides for a trial in the Federal district courts on all issues if the matter is not resolved administratively.

S.Rep. No. 778, 95th Cong., 2d Sess. 2 (1978), *reprinted in* 1978 U.S. Code Cong. Admin. News 2211-14.

The passage of the Customs Procedural Reform and Simplification Act was to afford importers the needed protection against arbitrary government action and "to give an importer an opportunity to fully resolve a penalty proceeding before Customs, before any action in this Court." S. Rep. No. 95-778, at 19-20 (1978)). Section 1592(b) twice grants importers "a

reasonable opportunity" to address Customs' allegations and demands that Customs impose a penalty only after considering the importer's representations. *See* 19 U.S.C. § 1592(b)(1)-(2).

### 2. Customs Willfully Refused to Allow Defendant to Make an Oral Presentation

Prior to his death, Mr. Leahy, contacted Customs on September 15, 2014 and requested a meeting with the agency if they were contemplating issuing a penalty notice. Ex. L. On October 30, 2014, Ms. Vogel, an attorney in Mr. Leahy's office, followed up with the Customs port and the Customs ORR attorney handling this case to confirm Tricots request for an oral hearing by phone and email. Customs ORR informed Ms. Vogel by email

> Thanks Ms. Vogel and this is the first I had seen or heard about Steve's letter. In any event we were advised to hold off on petition decision, as we were informed that the issue of retroactive TPL is being litigated in the action CBP brought in the CIT against your client's surety, who impleaded your client. **Under these circumstances, any meeting at this time would be premature**.

Ex. M (emphasis added) (confirming Tricots request and right to a hearing but refusing to grant the request). On November 21, 2014, Mr. John Brew, counsel for Plaintiff called Mr. Alan Cohen at ORR by telephone to inform Customs that he had been retained as co-counsel for Tricots (because of Mr. Leahy's health) and to again inquire and request an opportunity for an oral presentation (fourth contact). Ex. Q. At that time, Customs again assured Mr. Brew that no penalty would issue during the pendency of Ct. No. 11-00388 and that therefore, no meeting or any other filings were necessary. On November 24, 2015, Customs issued its final penalty determination before allowing Tricots to make an oral presentation. The final penalty determination was sent directly to Tricots (Customs never sent a copy or informed Tricots counsel, Leahy, Vogel or Brew) that a final penalty determination had been issued without providing Tricots an opportunity to make an oral presentation as required by law. Exh Q.

Plaintiff failed to provide Defendant with a "reasonable opportunity to make oral presentations" as to why a claim for monetary penalty should not be issued in the amount stated. After repeatedly acknowledging Defendant's requests and right to make an oral presentation, and confirming that no penalty would issue during the pendency of Ct. No. 11-00388, the Plaintiff proceeded to issue a final penalty and file a Complaint without granting Plaintiff its statutory right to an oral presentation. These actions cannot be considered "reasonable" under any circumstances and should not be condoned. The agency cannot arbitrarily mislead a party that no penalty decision will issue (and therefore no hearing is necessary), and then issue a decision when a party is entitled to make an oral presentation – and has so requested through both past and current counsel. At the very least, the Court must dismiss Ct. No. 16-0066 for the agency's willful and misleading actions as well its failure to exhaust its administrative remedies and to provide Defendant with a fair opportunity to be heard, which is a fundamental violation of due process of law. *See* 19 U.S.C. § 2637(d); U.S. Const. Amend. V.

The incontrovertible facts establish that the government is in substantial non-compliance with many of the statutory requirements of 19 U.S.C. § 1592(b), including failure to provide an opportunity for an oral presentation, changes to the penalty notice and penalty decision, providing misleading communications to counsel on Customs' willingness to meet, and failing to send a copy of the decision to counsel. These types of actions epitomize the kind of mischief that Congress sought to eliminate. To allow a violation of the procedural and notice requirements of Section 1592(b) would deprive Tricots of exactly the type of safeguards that the statute and Congress sought to protect. Moreover, as discussed below, Customs issuance of a final penalty determination and filing of a Complaint before following the statutory procedural

safeguards has imposed a tremendous burden on Defendant and prevented effective judicial review.

### 3. Customs Failure to Exhaust Administrative Remedies Prevented Full Review of Substantive Information

There is no dispute that Tricots sought and Customs failed to provide Tricots with an opportunity to make an oral presentation as required by law, thereby failing to exhaust administrative remedies before bringing this action. Below is a summary of the substantive issues that Customs failed to fully consider as a result of proceeding to a final determination and filing a Complaint without exhausting administrative remedies.

First, Customs failed to properly interpret and apply the separate and distinct statutory and regulatory requirements for making NAFTA corrections and when penalties may be imposed under NAFTA. To fully implement the terms of NAFTA, the U.S. had to enact new laws related to correction of errors (disclosures) and penalties. Unlike importers of goods from non-NAFTA countries, importers of goods from NAFTA countries are required to "correct" incorrect NAFTA declarations regardless of whether or not there is a violation of Section 1592(a). 19 U.S.C. 1592(c)(5).[3] In exchange for the increased obligation to correct NAFTA claims, the NAFTA provides importers with two additional rights: namely the ability to (1) "correct" NAFTA claims

_____

[3] Section 1592 (c)(5) provides that:

> (5) Prior disclosure regarding NAFTA claims an importer shall not be subject to penalties under subsection (a) of this section for making an incorrect claim for preferential tariff treatment under section 3332 of this title if the importer—
>
> (A) has reason to believe that the NAFTA Certificate of Origin (as defined in section 1508(b)(1) of this title) on which the claim was based contains incorrect information; and
>
> (B) in accordance with regulations issued by the Secretary, voluntarily **and promptly makes a corrected declaration and pays any duties owing**.

*Id.*

and (2) avoid *all* penalties if such corrections are made and "any duties owing" are paid. These new rights are separate from the existing U.S. penalty and prior disclosure statute and regulations for non-NAFTA imports. Indeed, NAFTA corrections must be made whether or not an entry has liquidated, and if the importer pays duty owed based on the "correct" NAFTA claim, then the regulations prevent Customs from seeking any penalties under Section 1592(a). 19 C.F.R. § 181.82 § 181.21(b). Here, Customs final administrative determination and Complaint effectively ignore the unique terms and plain language of the NAFTA laws and regulations and incorrectly applying laws related to disclosures and penalties for non-NAFTA imports.

Second, Customs final administrative determination is incorrectly and unlawfully based on a Customs Directive (Customs Directive No. 3550-085), which provides guidance on when importers must make "original" NAFTA TPL claims and the time limits within which importers may obtain "duty refunds" for NAFTA TPL claims. This policy has nothing to do with NAFTA corrections, and there is no reference in the policy suggesting it should be applied to NAFTA corrections. Original claims for refunds are not NAFTA "corrections." Under Plaintiff's theory, an importer who is required to make a technical correction on an original two year old NAFTA claim (which was not a negligent violation of Section l592(a)), would have to pay past duties or face the threat of penalties because the new NAFTA certification was not filed within one year -- despite the fact that there is no dispute that the "correct" NAFTA claim allows for duty free treatment. 19 U.S.C. § 1520(d); *Ford Motor Co. v. United States*, 635 F.3d 550, 557 (Fed. Cir. 2011). This is contrary to the NAFTA, and U.S. statutory and regulatory rules implementing the NAFTA. Even if the Customs Directive upon which Customs relies is relevant, it may not be applied here because it was not lawfully implemented in accordance with NAFTA and U.S. law. NAFTA Article 1802 states that parties should publish "advanced" notice

of measures it intends to implement and to provide interested parties a reasonable opportunity to "comment" on proposed measure before implementation.[4]  No such advanced publication or comment opportunity occurred prior to Customs issuing Directive No. 3550-085, and Plaintiff may not rely upon it here.[5]

Third, in its final determination Customs incorrectly stated that it was the agency's established practice to only accept TPL claims if made within 180 days from liquidation. Ex. N. While this may be true for original NAFTA TPL claims and requests for refunds, it is not true for NAFTA corrections.  Specifically, if provided a reasonable opportunity to make an oral presentation, counsel could have highlighted known instances and established practices in which Customs has accepted NAFTA TPLs when the importer was correcting a NAFTA ROO claim and Customs did not require the importer to pay past duties.  [          ] was a Canadian

---

[4] NAFTA, Article 1802 states:  To the extent possible, each Party shall:
      (a) publish in advance any such measure that it proposes to adopt; and

      (b) provide interested persons and Parties a reasonable opportunity to comment on such proposed measures.

*Id.*

[5] Customs states in its final penalty decision that: "CBP Directive 3550-85 contains the following instructions for completion of the Entry Summary, CBP Form 7501, when TPL is claimed with certificates of eligibility:

      6.7.1.   Canadian and Mexican TPL goods must be entered in accordance with 19 CFR 132. Entry type code 02 must be used when filing an entry summary for TPL claims. Block 30 of the CF 7501 must reflect the 10-digit HTS number and the 9999 TPL statistical reporting number. Value information should be associated with the appropriate CHapter 1-97 number or split between the appropriate CHAPTER 1-97 HTS number and any applicable Chapter 98 HTS number.

Customs Decision at 9 (Internal Footnotes omitted). None of this relevant to a NAFTA correction under 19 U.S.C. § 1592(c)(5). Further, Customs reliance on this Directive is also in violation of U.S. law, which also requires notice and comment, and allows for certain exceptions that were not given here. 5 U.S.C. § 553 *et seq*.

company who had a case under the exact same circumstances and Customs accepted this

company's retroactive NAFTA TPL claims without payment of duty. Ex. O, (E-Mail of

September 28, 2015, from Patt MacPherson, [                    ] Canadian Counsel). There is no basis

for Customs to treat Tricots differently than [                    ]. *See Heraeus-Amersil, Inc., v. United

States,* 600 F. Supp. 221 (CIT 1984) and *Heraeus-Amersil, Inc., v. United States,* 9 CIT 412

(1985) (explaining that importers may reasonably rely upon past practices of the agency).

Customs' prior practice of accepting retroactive TPL when importers make NAFTA corrections

was correct. The agency's current actions are not.

       Fourth, Customs' rejection of Tricots' NAFTA correction and refusal to accept NAFTA

TPL certifications is contrary to how Canada implements the NAFTA. DFAIT, who is the

Canadian Government agency responsible for issuing NAFTA TPL certifications for both U.S.

imports from Canada and U.S. exports to Canada, has an established practice to issue retroactive

TPL certifications. Following this practice here, DFAIT reviewed and confirmed that Tricots'

past exports qualified for duty free NAFTA TPL treatment and issued TPL certificates

accordingly. Ex. J at US0002017 (explaining that "Liesse, at the suggestions of Customs,

obtained the TPL certificates for these past shipments from DFAIT"). Moreover, if given a

reasonable opportunity to make an oral presentation, Tricots would have informed Customs that

its refusal to accept DFAIT issued TPL certificates is contrary to how Canadian Customs

("CBSA") implements the NAFTA. Upon receipt of TPL certifications issued to U.S. exporters

for past imports, CBSA accepts these retroactive TPL claims as required by the NAFTA

correction rules. In effect, Canada is providing U.S. exporters the very same benefits that

Customs is denying Tricots here. Canadian courts have also agreed that importers should be

given greater latitude when "correcting" entries and making NAFTA claims. *See e.g.*, *Bri-Chem*

*v. President of the Canada Border Services Agency*, AP-2014-017, *Evergreen Ecological Services Inc. v. President of the Canada Border Services Agency*, AP-2014-027 and *Southern Pacific Resource Corp. v. President of the Canada Border Services Agency*, AP-2014-028 In 2015 and 2016 (the Canadian International Trade Tribunal (CITT) and Canadian Court of Appeals (FCA) upheld the ability of importers to make NAFTA corrections beyond one year limit when original classification claims are changed.) *See*

*http://www.jdsupra.com/legalnews/the-bri-chem-trilogy-federal-court-32853/ (last viewed* 10/25/2016).

Fifth, given the inconsistencies between the positions of Customs and the Canadian Government, the Canadian Government has sought to resolve this matter through negotiations with the U.S. Government. Ex. P. The NAFTA encourages countries to resolve such disputes through negotiation. NAFTA, Article 2003.  If given a reasonable opportunity to make an oral presentation, Tricots would have informed Customs of these negotiation efforts, warranting a hold on making a final determination and filing a Complaint.   Because Tricots had signed SOL waivers, there was no need for Customs to proceed to litigation and thwart government negotiations.  However, by pushing this case to Court before exhaustion of administrative remedies the matter is now in "litigation" limiting U.S. engagement in negotiations.  This has forced the Government of Canada to initiate formal NAFTA Chapter 20 consultations.  Ex. P; NAFTA, Article 2006.  As a result, there are now two parallel proceedings (these CIT proceedings and the NAFTA Chapter 20 proceedings) to resolve this dispute.   Exhaustion of administrative remedies would have ameliorated this type of waste of judicial and government resources, and avoided the enormous burdens that have been unnecessarily placed upon Tricots.

Finally, during its oral presentation Tricots would have highlighted that fact that Customs' penalty claim was miscalculated. Customs demanded a penalty assuming that $2,249,196.04 in duties was owed. This number is based on the spreadsheet that Tricots provided the government as part of Tricots' NAFTA correction, Customs conveniently removed one column that indicated the origin of the yarn used to produce subject imports. *See and compare* Ex. B and Gov't Exhibit A to Complaint. Customs did not review, audit or modify the data provided. More importantly, Customs ignored the facts presented that many of the entries contained fabric produced from U.S., origin yarn, and qualified for NAFTA under the ROO as claimed. Since only MPF was owed, Tricots conservatively assumed the full value of entry was subject to MPF, overstating the MPF owed. Ex. B. Customs failure to exhaust administrative remedies will now require to government to prove, Tricots to provide, and this Court to review *de novo* the correct origin *of each product in each entry* (covering thousands of products and approximately 875 entries).

As demonstrated above, Defendant's failure to afford Tricots with a "reasonable" opportunity for a hearing and this failure to exhaust administrative remedies have created burdens, risks and a waste of resources that prevent effective judicial review.

      **4.**      **Customs Failed to Exhaust Administrative Remedies and Perfect its Penalty Demand against Tricots Because the Amount Sought in this Case is Double Customs' Final Administrative Penalty Demand**

On November 24, 2015, the agency issued its final penalty decision that was for the same amount as claimed in the pre-penalty and penalty notice. The final amount owed was determined to be $4,498,392.08, representing $2,249,196.04 and $2,249,196.04 in penalties, with no further relief granted upon review of Tricots response the Customs penalty notice. Ex. N. After the final penalty amount was determined, Customs filed this Complaint in Ct. No. 16-0066. For the first time, the United States is demanding $4,498,392.08 in penalties.

1.     This action is brought by the United States on behalf of U.S. Customs and Border Protection (CBP), to recover $2,249,196.04 in unpaid duties and fees pursuant to 19 U.S.C. § 1592(d), plus interest, and a penalty for negligence pursuant to 19 U.S.C. § 1592(c)(3) in the  amount of **$4,498,392.08**, stemming from Tricots's violations of 19 U.S.C. 1592(a) with respect  to approximately 875 entries of fabric from Canada.

Compl. ¶ 1 (emphasis added).

The Complaint amounts alleged bear no resemblance to the pre-penalty statement, the penalty notice, and the penalty decision that were issued by the agency. In effect, Customs disregarded the administrative proceedings and has issued Tricots a new penalty demand.  This court has stated "the courts statutory role is not to *impose* penalties . . . but rather to decide whether to permit recovery of penalties that the government has already imposed. Section 1592 mandates that Customs perfect a penalty claim prior to seeking recovery in this Court."  *Nitek Elecs., Inc.*, 844 F. Supp. 2d at 1306, *aff'd, United States v. Nitek Elecs., Inc.,* 806 F.3d 1376, (Fed. Cir. 2015).  Here, Customs is asking this Court to *impose* a new penalty in an amount greater than Customs demanded in its final determination rather than confirm that the penalty demanded by Customs is correct. Section 1592 itself provides that the penalty notice "shall specify all changes in the information provided" in the pre-penalty Notice, including the amount of penalty. 19 U.S.C. § 1592(b)(2). This language confirms that changes are permissible *as long as defendant has notice*. *United States v. Rotek, Inc.*, 22 C.I.T. 503, 510 (1998) (emphasis added).  By failing to follow statutory procedures in seeking a new penalty, Customs has failed to exhaust administrative remedies, and now seeks relief beyond this Court's statutory role and contrary to settled law.  Thus, this Court should dismiss Plaintiff's Complaint.

### 5.     The Limited Exceptions to Customs' Failure to Exhaust Administrative Remedies Do Not Apply

The Federal Circuit and this Court have analyzed compliance with section 1592(b) in numerous cases. Section 1592(b) provides certain administrative procedures that Customs must

follow, comparable to the administrative protest provisions required prior to 28 U.S.C. § 1581(a)

actions. As the Court explained in its reconsideration decision in *Nitek*, under the predominant

approach, Customs' failure to abide by this articulated procedure is best viewed as a failure to

perfect its claim by exhausting crucial administrative remedies prior to seeking relief in this

Court. *Nitek Elecs., Inc.*, 34 Int'l Trade Rep. (BNA) 1903 at n.4. (CIT Aug. 7, 2012 ) (explaining

"under a different lens, though, the issue of failing to properly impose a penalty below presents a

far more intrinsic defect in Plaintiff's cause of action: There simply is no negligence penalty

claim for which the government could possibly recover. Failure to adhere to § 1592(b) would, in

this alternative view, render any subsequent recovery action not an affront to § 2637(d)-

mandated exhaustion but rather an impossibility. Allowing the government's case to proceed

would then put the Court in the position of imposing a claim on the importer in the first instance

– a clear departure from the Court's statutory role."). Moreover, the Supreme Court has stated

proper exhaustion demands compliance with . . . critical procedural rules because no adjudicative

system can function effectively without imposing some orderly structure on the course of its

proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Section 1592(b) sets forth clear

procedural safeguards, requiring Customs to notify importers of any changes to penalty claims.

The purpose of these safeguards is to ensure importers are given notice and an opportunity to

respond to and resolve the claims against them, and to ensure effective judicial review.

Further, Section 2637(d) "indicates a congressional intent that absent a strong contrary

reason, the court should insist that parties exhaust their administrative remedies before pertinent

agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed. Cir. 2007). *See, e.g.,*

*United States v. UPS Customhouse Brokerage, Inc.*, 686 F. Supp. 2d 1337, 1346 (2010) ("To

demonstrate that a penalty has been properly imposed under § 1641(d)(2)(A), Plaintiff must

establish both that the broker committed a violation of Customs law as the predicate for the penalty, and that all formal requirements of the procedure for imposing the penalty were properly followed by Customs."); *United States v. Jean Roberts of Cal., Inc.*, 30 CIT 2027, 2030 (2006) ("Before seeking to recover a penalty in the Court of International Trade, Customs must perfect its penalty claim in the administrative process required by Section 592 . . . ."); *United States v. Bavarian Motors, Inc.*, 4 CIT 83, 86 (1982); *Nitek Elecs., Inc.*, 34 Int'l Trade Rep. (BNA) 1903; *United States v. Stanley Works,*" 862 F. Supp. at 382-83 (explaining Defendants were forced to respond to pre-penalty and penalty notices on short time frame despite having no delay in enforcement concerns as the SOL was waived, so Customs failure exhaust its administrative remedies and provide the defendants with an opportunity to be heard was not reasonable.)

Despite the case law and stated Congressional intent to require exhaustion of remedies in Customs penalty cases, Courts have recognized limited exceptions to the exhaustion requirements. *See e.g. United States v. Priority Products, Inc.*, 615 F. Supp. 591 (CIT 1985), aff'd 793 F.2d 296 (Fed. Cir. 1986) (explaining that the court retains subject matter jurisdiction over officers of a small importer under narrow facts of case because officers had actual notice and Customs had to preserve its right to sue); *Rotek, Inc.*, 22 C.I.T. at 503. (stating that the court retains jurisdiction despite different claims in pre-penalty and penalty notices because the Complaint was same as penalty notice).

None of the limited exceptions to the exhaustion requirement apply here. Customs failed to comply with established statutory requirements, in addition to the regulatory requirements. Section 1592 twice requires Customs provide importers the right to an oral presentation. 19 U.S.C. § 1592(b)(1)-(2). Although specifically requested, Defendant's counsel was not provided with an opportunity for an oral presentation. In addition, this Court's statutory authority is

limited to a review of penalties that Customs has demanded at the administrative level, not to impose new penalty amounts sought by the Department of Justice in the first instance. Customs' Complaint now asks this Court to impose new penalties, double those demanded in the final administrative determination, which is not allowed under this Court's statutory role.

Customs actions throughout this matter were not reasonable and there were no justifiable concerns related to delay in enforcement. Defendant's counsel contacted Customs on four separate occasions regarding its right to make an oral presentation. Customs not only failed to afford Tricots sufficient opportunity to present, but affirmatively mislead Tricots into believing that it would have the opportunity to do so and then issued a final determination. Customs' filing a Complaint and requesting this Court to impose penalties double those in Customs' final administrative determination is equally unreasonable and unjustified.

Finally, Customs failure to exhaust administrative remedies was not harmless. Had Tricots been provided the opportunity, it would have presented Customs with critical substantive information, including legal flaws in Customs' analysis, the importance of allowing NAFTA negotiations to proceed and the errors in seeking duties on imports that qualify for duty free treatment under the NAFTA ROO. Customs' filing suit seeking a new penalty, double that of its final determination, is also not harmless. If Customs wanted to impose a higher penalty, then it would be required to issue a new penalty notice and provide Tricots an opportunity to respond. Tricots has not been given the opportunity to respond to this new penalty, and this Court's statutory role is not to impose new penalties requested by Customs but to ensure that penalties demanded by Customs have been properly assessed. In short, Customs has failed to provide guaranteed rights to Tricots, imposed unnecessary burdens on the company, caused a waste of judicial resources and failed to follow statutory procedures necessary for this Court to properly

adjudicate the matter. Customs' actions, and their consequences, are precisely the types of actions that Congress prohibited when it imposed strict statutory administrative procedures upon Customs in Section 1592(b).

### C. The Complaint must be Dismissed for Failure to State a Cause of Action Upon which Relief May be Granted

In considering Motions to Dismiss Customs penalty actions based on Customs' failure to exhaust administrative remedies, this Court has found that failure to exhaust claims may be "non-jurisdictional" or not strictly jurisdictional. *Nitek*, 844 F. Supp. 2d at 1298. As explained above, Customs has failed to exhaust administrative remedies. If Customs failed to perform its statutory obligations such as allowing an oral presentation, the Customs has failed to perfect its claim. In such cases, the Court has found that a Rule 12(b)(1) Motion to Dismiss may not provide the appropriate relief because it concerns the Court's power to hear a case (subject matter jurisdiction), rather than a party's ability to seek relief. Thus, the appropriate remedy in such cases is to dismiss the case based on USCIT R. 12(b)(6) because by failure to exhaust administrative remedies, Customs failed to state a claim upon which relief may be granted. This Court's statutory role is not to impose penalties, but rather to decide whether to permit recovery of penalties the government has already imposed. *Id.* at 1298. If Customs has failed to exhaust administrative remedies, as we have demonstrated Customs has failed to do here, then Customs has failed to "perfect" a valid penalty claim. Because Customs must perfect a valid penalty claim at the administrative level before seeking recovery of that penalty before this Court, this action must be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

## IV.    CONCLUSION

There can be no dispute that the government has failed to exhaust administrative remedies in this case – and the government cannot meet its burden that any of the limited exceptions to the exhaustion requirement exist in this case.    Customs' actions have been contrary to clear statutory requirements, unreasonable, and overreaching.  This Court does not have jurisdiction to impose new penalties (not demanded in the final administrative determination), and should not condone Customs' willful refusal to deny Tricots an oral presentation.  For the reasons provided above, we request that this Court dismiss Ct. No. 16-0066.

By: /s/ Frances Hadfield
John Brew
Frances Hadfield
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, NY 10022
Tel.: (212) 803-4040
FHadfield@crowell.com

November 28, 2016

## CERTIFICATE OF COMPLIANCE PURSUANT TO USCIT
## STANDARD CHAMBER PROCEDURE 2(B)

I, Frances P. Hadfield, counsel at Crowell & Moring LLP, who is responsible for the foregoing brief, relying upon the word count feature of the word processing program used to prepare the brief, certify that this brief complies with the type-volume limitation under USCIT Standard Chamber Procedure 2(B) and contains 8,562 words.

/s/ Frances P. Hadfield

38538014_1.docx