Slip Op. 18–29

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| UNITED STATES, | : | |
| Plaintiff, | : | |
| v. | : | |
| AEGIS SECURITY INSURANCE COMPANY, | : | Before: Richard K. Eaton, Judge |
| | : | Consol. Court No. 11-00388 |
| Defendant, | : | |
| and | : | |
| TRICOTS LIESSE 1983, INC., | : | |
| Third-Party Defendant. | : | |

**OPINION**

[Tricots Liesse 1983, Inc.'s motion for summary judgment is granted in part.]

Dated: March 26, 2018

*Chad A. Readler*, Acting Assistant Attorney General, for plaintiff. With him on the brief were *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, and *Stephen C. Tosini*, Senior Trial Counsel, Department of Justice, Civil Division, Commercial Litigation Branch, of Washington, DC. Of counsel on the brief was *Matthew C. Landreth*, Office of the Assistant Chief Counsel, U.S. Customs and Border Protection, of Buffalo, NY.

*Frances Hadfield* and *John Brew*, Crowell & Moring LLP, of New York, NY, for third-party defendant.

Eaton, Judge: One case, in this consolidated action, was brought by plaintiff the United States ("plaintiff" or the "Government") against Tricots Liesse 1983, Inc. ("third-party defendant" or "Tricots") to recover civil penalties and unpaid duties pursuant to 19 U.S.C. § 1592(c) and 19

U.S.C. § 1592(d) (2012).[1] *See* Compl., Court No. 16-00066, ECF No. 2 ("Court No. 16-00066 Compl."). Plaintiff commenced this case as Court No. 16-00066 on April 25, 2016. Court No. 16-00066 Compl. On August 3, 2016, it was consolidated with another case brought by plaintiff against Aegis Security Insurance Company ("Aegis") (Court No. 11-00388) that contests similar issues.[2] *See* Order dated Aug. 3, 2016, ECF No. 68.

Before the court is Tricots' motion to dismiss plaintiff's complaint in Court No. 16-00066, pursuant to USCIT Rules 12(b)(1) and 12(b)(6), on the grounds that (1) the court lacks subject matter jurisdiction because United States Customs and Border Protection ("Customs") failed to exhaust its administrative remedies that, the company argues, are prerequisites for the initiation of penalty claims under 19 U.S.C. § 1592(e) and duty claims under § 1592(d); or (2) for the same reasons, plaintiff has failed to state a claim upon which relief can be granted. *See* Tricots' Mem. Supp. Mot. Dismiss, ECF No. 77 ("Tricots' Br."); Tricots' Reply Pl.'s Resp. Mot. Dismiss, ECF No. 84 ("Tricots' Reply"). Plaintiff opposes the motion. *See* Pl.'s Opp'n Tricots' Mot. Dismiss and Cross Mot. Partial Summ. J., ECF No. 89 ("Pl.'s Br."). Aegis has not filed a response to Tricots' motion to dismiss.

Since both Tricots and the Government have presented, and the court has relied on, extra-pleading material to support their claims with respect to the exhaustion of administrative remedies

---

[1] All references to the United States Code are to the 2012 edition, unless otherwise noted.

[2] The case against Aegis is also for the recovery of unpaid duties pursuant to 19 U.S.C. § 1592(d) for alleged violations of 19 U.S.C. § 1592(a). *See* Compl., Court No. 11-00388, ECF No. 2 ("Court No. 11-00388 Compl.") ¶ 3. Aegis is a surety company that issued a bond to third-party defendant Tricots to secure duties owed on entries of imported fabric. In its answer, Aegis asserted, *inter alia*, a third-party claim against Tricots. *See* Answer, Court No. 11-00388, ECF No. 13 ("Aegis Answer") ¶ 4.

issue, Tricots' motion has been converted into one for summary judgment. USCIT R. 12(d). Because Customs failed to exhaust its administrative remedies and thus failed to perfect its penalty claim, Tricots' motion for summary judgment is granted in part, and the court awards summary judgment in favor of Tricots on plaintiff's penalty claim.

## BACKGROUND

Tricots is a manufacturer and exporter of circular knitted fabric that is located in Montreal, Quebec, Canada. Tricots' Br. Ex. B, at 1, 2. Tricots purchases yarn and other raw materials from both North American Free Trade Agreement ("NAFTA")[3] territory suppliers, and non-NAFTA territory suppliers. All of Tricots' knit fabrics are manufactured in its plant in Montreal. Fabrics produced by Tricots are then shipped to U.S. apparel manufacturers. Tricots' Br. Ex. J, at 1, 4. Between November 9, 2005 and December 23, 2008, Tricots claimed, on its entry papers, that the yarn used to produce certain entries of its fabric originated from NAFTA territories, and therefore, that they were eligible for duty-free treatment under NAFTA Rules of Origin. Court No. 16-00066 Compl. ¶¶ 3, 4; Tricots' Br. Ex. A, B, D. As a result, approximately eight hundred seventy-five of the entries were liquidated duty free and free of the merchandise processing fee ("MPF")[4] on May 5, 2010. Johnson Decl., ECF No. 89-10, ¶ 18.

---

[3] NAFTA was enacted into U.S. law on December 8, 1993, for the purpose of further promoting the free flow of goods between the United States, Canada, and Mexico. *See* 19 U.S.C. § 3312 (1994); *Corrpro Companies, Inc. v. United States*, 433 F.3d 1360, 1362 (Fed. Cir. 2006). To accomplish this goal, the agreement provides for the elimination of most tariffs collected on goods originating from the three countries. *Corrpro Companies*, 433 F.3d at 1362. Preferential tariff treatment is not automatic, however, and an importer must make a written declaration that the goods qualify for NAFTA treatment based on a "complete and properly executed original Certificate of Origin . . . ." 19 C.F.R. § 181.21(a) (2008).

[4] MPFs are administrative fees owed on most imports into the United States. Under 19 C.F.R. § 24.23(b), "merchandise that is formally entered or released is subject to the payment to [Customs] of an *ad valorem* fee." 19 C.F.R. § 24.23(b)(1)(i). The fee "is due and payable to [Customs] by the importer of record of the merchandise at the time of presentation of the entry

Following liquidation, on May 28, 2010, Tricots sought prior disclosure treatment under 19 U.S.C. § 1592(c)(4) or (c)(5),[5] and notified Customs that several entries of knitted fabric were incorrectly declared as eligible for duty-free treatment as NAFTA-originating goods. Tricots' Br. Ex. B, at 2; *see also* Tricots' Br. Ex. I. Tricots stated, however, that the entries, nonetheless,

---

summary and is based on the value of the merchandise as determined under 19 U.S.C. 1401a" and "shall not exceed $425 and shall not be less than $25." 19 C.F.R. § 24.23(b)(1)(i)-(ii). Entries originating in a NAFTA country are not charged this fee, but entries that qualify for duty-free treatment under the Tariff Preference Level Quota Program are assessed an MPF.

[5]     Title 19 U.S.C. § 1592(c)(4) provides an opportunity for self-reporting of errors on the importation of goods into the United States, and reads, in pertinent part:

> If the person concerned discloses the circumstances of a violation of subsection (a) of this section before, or without knowledge of, the commencement of a formal investigation of such violation, with respect to such violation, merchandise shall not be seized and any monetary penalty to be assessed under subsection (c) of this section shall not exceed . . . if such violation resulted from negligence . . . the interest (computed from the date of liquidation at the prevailing rate of interest applied under section 6621 of title 26) on the amount of lawful duties, taxes, and fees of which the United States is or may be deprived so long as such person tenders the unpaid amount of the lawful duties, taxes, and fees at the time of disclosure, or within 30 days (or such longer period as the Customs Service may provide) after notice by the Customs Service of its calculation of such unpaid amount.

19 U.S.C. § 1592(c)(4). Under 19 U.S.C. § 1592(c)(5):

> [a]n importer shall not be subject to penalties under subsection (a) of this section for making an incorrect claim for preferential tariff treatment under section 3332 of this title if the importer—
>
> > (A) has reason to believe that the NAFTA Certificate of Origin (as defined in section 1508(b)(1) of this title) on which the claim was based contains incorrect information; and
> >
> > (B) in accordance with regulations issued by the Secretary, voluntarily and promptly makes a corrected declaration and pays any duties owing.

19 U.S.C. § 1592(c)(5).

qualified for duty-free treatment under the NAFTA Tariff Preference Level ("TPL") Quota Program.[6] Tricots' Br. Ex. B, at 1.

On December 1, 2010, for the purpose of "complet[ing] the prior disclosure" and "provid[ing] information concerning the amount of [MPF] which would have been due had the entry been made correctly," Tricots supplemented its May 28, 2010 letter with a second letter that calculated the fees owed on its imports under the TPL program as being $44,683.35. Tricots' Br. Ex. D, at 2. Following this letter, Customs notified Tricots' counsel that it had reviewed the company's submission, and although Tricots had accounted for the MPF that was due, the company had "not accounted for the Duty due," and, moreover, that "[Customs'] policy is that if a company has failed to present Certificates of Eligibility by the time of final liquidation, this precludes that company from receiving the duty preference under TPL."[7] Tricots' Br. Ex. F, at 2. Following a subsequent telephone conversation[8] between a Customs official and Tricots' counsel

---

[6]  According to Tricots:

NAFTA TPL rules allow duty free treatment on knitted fabrics produced in Canada from non-NAFTA yarns that do not meet the NAFTA [Rules of Origin], up to a certain quantity per year. TPL limits for the subject imports have never been met and for the subject period were between only 27 and 54 percent filled (including Tricots' TPLs). The Government of Canada, Department of Foreign Affairs and International Trade, has the sole authority to issue certificates of eligibility for TPL for both imports into Canada and exports to the U.S. TPL provisions are provided for in Additional U.S. Notes 3-6 and Statistical Note 5 to Section XI of the HTS. [MPF] are owed on NAFTA TPL imports, which [at] a minimum is $25.00 and at a maximum is $485.00 per shipment.

Tricots' Br. 3 n.2 (citations omitted).

[7]  Although this response to the December 1, 2010 letter is referred to in Tricots' subsequent administrative submissions, there is no mention of the date or the nature of this response (*e.g.*, whether it was a written response) in the record.

[8]  While this telephone conversation is referred to in Tricots' subsequent submissions, there is no date for the conversation in the record.

concerning "Customs' interpretation of the statute requiring the payment of duties," both parties determined that Tricots should submit a "written position paper" on the issue to Customs, which it did on January 5, 2011.[9] Tricots' Br. Ex. F, at 2. No further action was taken by either party until May 23, 2011, when Customs sent a letter to Tricots notifying the company that after "carefully review[ing Tricots'] correspondence, the information [Tricots'] office provided, and each of the entries at issue," Customs had concluded that Tricots owed $2,249,196.04 in lost revenue, representing $2,206,596.05 in unpaid duties and $42,599.99 in unpaid fees. Tricots' Br. Ex. E. No explanation regarding Tricots' arguments in the written position paper was given. *See* Tricots' Br. Ex. E. The letter also notified Tricots that, following its deposit of the full amount owed, the company could seek review of Customs' calculations pursuant to 19 C.F.R. § 162.74(c). Tricots was given until June 24, 2011 to tender the amount, which for Customs, would perfect the prior disclosure.[10] Tricots' Br. Ex. E; 19 U.S.C. § 1592(c)(4), (5).

---

[9] Specifically, Tricots' January 5, 2011 "written position paper" argued that "Customs Directive 3550-085 covers claims under TPL and supports Customs' position" that TPL Certificates of Eligibility must be submitted before final liquidation, but that the issue in this case "does not revolve around a claim by the importer for treatment under TPL but revolves around the specific wording of the statute which provides that the United States will require any lawful duties, taxes, and fees of which it was deprived to be restored. This then becomes the critical issue in the analysis." Johnson Decl. Ex. 6, at 3. Moreover, Tricots argued that "[t]he problem with Customs' position in this matter is that the issue of [§ 1592(d)] duties is separate and distinct from an issue of the final liquidation of an entry. Under [§ 1592(d)], Customs is attempting to recoup those lawful duties, taxes, and fees for which it was deprived. It has no nexus to the issue of a claim for TPL treatment. In fact, 1592(d) operates outside of the constraints of 19 U.S.C. § 1514." Johnson Decl. Ex. 6, at 3. Therefore, Tricots took the position that "the government must prove that [it] would have collected the duties but for the false statements or omissions," which Tricots maintained Customs could not do. Johnson Decl. Ex. 6, at 5.

[10] Under 19 C.F.R. § 162.74(c) (2011), in order to perfect a prior disclosure, "[a] person who discloses the circumstances of the violation shall tender any actual loss of duties, taxes and fees or actual loss of revenue. The disclosing party may choose to make the tender either at the time of the claimed prior disclosure, or within 30 days after [Customs] notifies the person in writing of [Customs'] calculation of the actual loss of duties, taxes and fees or actual loss of revenue."

As Customs had previously notified Tricots' counsel, Customs decided that the subject entries were not eligible for duty-free treatment under the TPL program because, pursuant to Customs Directive 3550-085, Tricots was required to submit its TPL Certificates of Eligibility prior to the May 5, 2010 final liquidation of the entries. According to Customs, Tricots did not submit the Certificates of Eligibility prior to the May 5, 2010 final liquidation or take other steps to preserve eligibility.[11] Tricots' Br. Ex E, at 2; *see also* Johnson Decl. Ex. 9 ("Thus, an importer whose entries are eligible for TPL treatment but does not file the certificates at entry may 1) submit the certificates any time before final liquidation; 2) file a protest within 90 days of liquidation; 3) request extension of liquidation.").

On June 22, 2011, Tricots submitted its first offer in compromise pursuant to 19 U.S.C. § 1617 and tendered $85,199.98, representing twice the amount of the unpaid MPFs it claimed were due on the entries. Tricots' Br. Ex. F, at 8.[12] In response, on December 7, 2011, Customs sent a letter stating that Tricots' entries did not qualify for prior disclosure treatment under 19 U.S.C. § 1592(c)(4) or (5) because the company "did not tender the total amount owed by [June 24, 2011]" and therefore did not "perfect its prior disclosure." Tricots' Br. Ex. I.

Subsequently, on February 16, 2012, pursuant to § 1592(b)(1)(A), Customs issued a pre-penalty notice to Tricots (the "Pre-Penalty Notice"), alleging that Tricots negligently entered goods

---

[11] According to Customs Ruling HQ 229504, "an importer ha[s] until liquidation to supply the Certificates of Eligibility, and the opportunity to request delay of liquidation if necessary." Johnson Decl. Ex. 9, at 5.

[12] Meanwhile, on May 18, 2011, May 31, 2011, and June 9, 2011, Customs issued duty demands to Tricots' surety, Aegis. Court No. 11-00388 Compl. ¶ 21; Aegis Answer ¶ 21. Aegis did not respond to any of those demands. Court No. 11-00388 Compl. ¶ 21; Aegis Answer ¶ 21. On September 27, 2011, Customs filed suit to recover duties against Aegis pursuant to 19 U.S.C. § 1592(d). *See* Court No. 11-00388 Compl. Aegis later impleaded Tricots. Tricots executed a number of waivers, and thus, Customs did not sue Tricots itself until April 25, 2016. Tricots' Br. Ex. C; *see also* Court No. 16-00066 Compl.

into the United States without paying duties, and notified Tricots that Customs was "contemplating" a $2,249,196.04 monetary penalty. Tricots' Br. Ex. G; *see* 19 U.S.C. § 1592(b)(1)(A). The Pre-Penalty Notice also included a demand for the outstanding duties and MPFs, totaling another $2,249,196.04, resulting in a total demand of $4,498,392.08. Tricots' Br. Ex. G; *see* 19 U.S.C. § 1592(d).

On April 16, 2012, Tricots submitted a written response to Customs' Pre-Penalty Notice claiming that, because a "valid prior disclosure was filed," Tricots was only responsible for $42,599.99 in unpaid MPFs. Tricots' Br. Ex. H, at 12. Notwithstanding the Pre-Penalty Notice's statement that Tricots "ha[s] the right to make an oral . . . presentation within 30 days of the date of this notice as to why a claim for monetary penalty should not be issued in the amount proposed or that the loss of duties is less than the amount demanded," the record does not contain any evidence that Tricots requested a face-to-face meeting with Customs prior to the issuance of the written penalty claim. *See* Tricots' Br. Ex. G, H.

On May 3, 2013, a representative[13] of Tricots participated in a telephone conversation with Customs' Acting Director for Trade Policy and Programs. Leonard Decl., ECF No. 89-15 ¶ 8; Labuda Decl., ECF No. 88 ¶ 12. During the telephone call, the Tricots representative explained that Customs "should accept [Tricots'] offer in compromise because there was no loss of revenue." Labuda Decl. ¶ 12; *see also* Leonard Decl. ¶ 10 ("During the course of our communications and conversations, [the Tricots representative], on behalf of Tricots, sought to inform and influence

---

[13] According to the record, the representative involved in the May 3, 2013, and August 3, 2013, telephone calls is not an attorney and is not licensed to practice law in any jurisdiction, nor is the representative a licensed Customs broker. Rather, the representative was "retained . . . as a consultant to assist [Tricots] regarding [Customs'] claims" by "determin[ing] who within [Customs] might be best positioned to gauge [Customs'] willingness to accept [Tricots'] offer in compromise." Labuda Decl., ECF No. 88 ¶¶ 8-10.

senior [Customs] staff . . . about the penalty that [Customs] initially proposed against Tricots, and the penalty that [Customs] later issued to Tricots . . . .").

Thereafter, Customs sent a letter dated May 9, 2013, to Tricots that (1) again informed the company that, notwithstanding its April letter, Tricots still did not qualify for prior disclosure treatment; (2) rejected Tricots' June 22, 2011 offer in compromise; and (3) issued Tricots a written penalty claim (the "Notice of Penalty") for $4,498,392.08 (*i.e.*, a $2,249,196.04 monetary penalty plus $2,249,196.04 in lost revenue). Tricots' Br. Ex. I ("As previously notified by letter dated December 7, 2011, [Tricots] does not qualify for prior disclosure treatment under 19 U.S.C. § 1592(c)(4) or (c)(5)."); *see* 19 U.S.C. § 1592(b)(2).

On July 15, 2013, Tricots submitted a written response to Customs' Notice of Penalty in the form of a petition and second offer in compromise (the "Petition").[14] Tricots' Br. Ex. J. The Petition once again stated Tricots' position that "a valid prior disclosure was filed" and therefore, that the company owed no duties and was only responsible for $42,599.99 in unpaid MPFs. Tricots' Br. Ex. J, at 15. In addition, Tricots' second offer in compromise increased the amount of its first, tendering $160,000 to Customs "in order to settle th[e] matter in a manner acceptable to all parties." Tricots' Br. Ex. J, at 15.

On August 3, 2013, the same Tricots representative made another telephone call to Customs and spoke with Customs' Assistant Commissioner of Trade and Customs' Acting

---

[14]   Under 19 U.S.C. § 1592(b)(2), following the issuance of a pre-penalty notice and any representations made by the importer regarding the propriety of such a penalty, "[i]f the Customs Service determines that there was a violation, it shall issue a [Notice of Penalty] to such a person," and the importer "shall have a reasonable opportunity under [19 U.S.C. § 1618] to make representations, both oral and written, seeking remission or mitigation of the monetary penalty." Section 1618 provides, in pertinent part, that any person who has incurred or is alleged to have incurred any penalty may file "a petition for the remission or mitigation of such . . . penalty." 19 U.S.C. § 1618.

Director for Trade Policy and Programs. Labuda Decl. ¶ 13. During this conversation, the Tricots representative "explained that [Customs] should accept [Tricots'] second offer in compromise ($160,000) as a policy matter because there was no loss of revenue and the goods qualified for NAFTA under the existing TPL." Labuda Decl. ¶ 13. The Customs agents "indicated that [Customs] would get back to [the Tricots representative] on whether or not the second offer in compromise was acceptable." Labuda Decl. ¶ 13. On June 13, 2014, Customs rejected Tricots' second offer in compromise by letter. Tricots' Br. Ex. K.

Following this second rejection by Customs, Tricots' counsel sent a letter, on September 15, 2014, asking for a face-to-face meeting with Customs as provided for by statute. Tricots' Br. Ex. L ("September 15, 2014 Letter"); *see* 19 U.S.C. § 1592(b)(2) ("Such person [(*i.e.*, a person Customs has determined violated § 1592(a))] shall have a reasonable opportunity under section 1618 of this title to make representations, both oral and written, seeking remission or mitigation of the monetary penalty."). On October 30, 2014, Tricots' counsel sent a follow-up email to a senior attorney for Customs, asking if the September 15, 2014 Letter had been received and if there would be a meeting before a final penalty determination[15] was issued. Tricots' Br. Ex. M. In response, the senior attorney, on behalf of Customs, noted that he had not seen the September 15, 2014 Letter, but that "any meeting at this time would be premature" because the Government was currently litigating a case with Tricots' surety, Aegis,[16] on the issue of retroactive TPL. Tricots'

---

[15] Under § 1592(b)(2), following the issuance of the Notice of Penalty, and after considering any representations made by the importer concerned regarding mitigation or remission of the monetary penalty, Customs shall "provide to the person concerned a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based" (*i.e.*, a "final penalty determination").

[16] Prior to the consolidation of Court Nos. 11-00388 and 16-00066, Aegis asserted in its answer that "the NAFTA treaty sets forth no cut-off date for the tender and a signatory's acceptance of a TPL certificate to qualify an entry for TPL duty relief," and that "[t]here is no United States Statute" or "[Customs] regulation that sets forth a cut-off date for the tender and

Br. Ex. M. On or about November 21, 2014, an attorney representing Tricots spoke with the same senior attorney on the telephone regarding the status of the case and again asked for a meeting with Customs to review the Notice of Penalty. Tricots' Br. Ex. Q ("Brew Aff.") ¶ 7. Customs, however, did not agree to meet with Tricots. Brew Aff. ¶ 7 ("[A Customs senior attorney] indicated to [Tricots' representative] during that telephone conversation [on or about November 21, 2014] that because of the pending case with the surety, Aegis, that involved similar issues, Customs was holding the administrative proceeding against Tricots and did not agree to meet with Tricots.").

On November 24, 2015, Customs issued a final penalty determination, denying Tricots' July 15, 2013 petition for relief from the penalty. Tricots' Br. Ex. N (the "Final Penalty Determination"). In its Final Penalty Determination, Customs found that Tricots owed $4,498,392.08, representing $2,249,196.04 in unpaid duties and $2,249,196.04 in penalties. Final Penalty Determination at 11.

On April 25, 2016, plaintiff filed its complaint in Court No. 16-00066. The complaint increased the amount Customs sought by demanding $4,498,392.08 in monetary penalties under 19 U.S.C. § 1592(c) for negligence, representing two times the amount of lost revenue, which is the statutory maximum under 19 U.S.C. § 1592(c)(3) (and double the amount Customs assessed in its Final Penalty Determination) and $2,249,196.04 in lost duties pursuant to 19 U.S.C. § 1592(d), for a total demand of $6,747,588.12. *See* Court No. 16-00066 Compl. ¶ 1. On August 3, 2016, the court granted the parties' consent motion to consolidate the case against Tricots (Court No. 16-00066) and the Government's case against Aegis (Court No. 11-00388). *See* Order dated Aug. 3, 2016, ECF No. 68.

---

signatory's acceptance of a TPL certificate," and therefore, if Customs had accepted the required certificates of eligibility, "the claim for loss of revenue in this civil action would be extinguished." Aegis Answer ¶¶ 3-5, 9.

## LEGAL FRAMEWORK

Under 19 U.S.C. § 1592(a), "no person, by fraud, gross negligence, or negligence . . . may enter, introduce, or attempt to enter or introduce any merchandise into commerce of the United States by means of" material and false documents, information, acts or by any omission which is "material." If Customs has reason to believe that a violation of § 1592(a) has occurred, "and determines that further proceedings are warranted," it must first issue a written pre-penalty notice to any person concerned, stating "its intention to issue a claim for a monetary penalty." 19 U.S.C. § 1592(b)(1)(A). The notice must contain several pieces of information provided for in § 1592(b), including "whether the alleged violation occurred as a result of fraud, gross negligence, or negligence," "the estimated loss of lawful duties, . . . the amount of the proposed monetary penalty," and must also "inform such person that he shall have a reasonable opportunity to make representations, both oral and written, as to why a claim for a monetary penalty should not be issued in the amount stated." 19 U.S.C. § 1592(b)(1)(A)(v)-(vii).

Following the issuance of the pre-penalty notice, and after considering any oral and written representations made by persons concerned regarding the monetary penalty, if Customs still finds that a § 1592(a) violation occurred, it "shall issue a [notice of penalty] to such person," which, among other things, must "specify all changes in the information provided" in the pre-penalty notice. 19 U.S.C. § 1592(b)(2). After the issuance of a notice of penalty, the persons concerned again "shall have a reasonable opportunity . . . to make representations, both oral and written, seeking remission or mitigation of the monetary penalty." *Id.*

The inclusion of the statutorily required material, and the provision of an opportunity to be heard, are not trivial matters. As this Court explained in *United States v. International Trading Services*:

> Section 1592(b) states the procedures by which the United States must exhaust administrative remedies; to wit, "Customs must perfect its penalty claim in the administrative process . . . by issuing a pre-penalty notice and a notice of penalty." The pre-penalty notice must include certain information. After considering representations made by the person to whom it was issued and upon finding a violation, Customs must issue "a written penalty claim" to that person. "Such person shall have a reasonable opportunity . . . to make representations, both oral and written, seeking remission or mitigation of the monetary penalty." At the end of the proceeding, Customs must issue "a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based."

40 CIT __, __, 190 F. Supp. 3d 1263, 1269-70 (2016) (quoting *United States v. Jean Roberts of Cal., Inc.*, 30 CIT 2027, 2030 (2006)) (citations omitted).

Following the issuance of a notice of penalty, and "[a]t the conclusion of any proceeding under [19 U.S.C. § 1618]," Customs "shall provide to the person concerned a written statement which sets forth the final determination and the findings of fact and conclusions of law on which such determination is based" (*i.e.*, a "final penalty determination"). 19 U.S.C. § 1592(b)(2). If Customs does not receive the penalties and duties assessed following its final determination, the Department of Justice may file suit in this Court under § 1592(e) "for the recovery of any monetary penalty claimed under [§ 1592]" as well as the restoration of lawfully owed duties under § 1592(d). 19 U.S.C. § 1592(e), (d).

## DISCUSSION

Tricots contends that "[b]ecause Customs must perfect a valid penalty claim at the administrative level before seeking recovery of that penalty before this Court, this action must be dismissed for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6)." Tricots' Br. 23. In support of its position, Tricots cites evidence that, it argues, demonstrates "the uncontested facts are that [p]laintiff did not provide Tricots with an opportunity for an oral penalty

hearing, which is a statutory requirement for exhaustion," and thus, the case must be dismissed. Tricots' Reply 9.

Plaintiff, however, maintains that because Tricots' representative conferred with Customs officials over the telephone, the Government "should prevail as a matter of fact on this issue" and Tricots' Rule 12(b)(6) motion must fail. Pl.'s Br. 11.

As an initial matter, because information outside the pleadings regarding exhaustion is presented by both parties (*i.e.*, Tricots and the Government), and because both parties have had reasonable notice and opportunity to present pertinent material, the motion to dismiss under USCIT Rule 12(b)(6) will be treated as one for summary judgment and disposed of as provided in USCIT Rule 56.[17] *See* USCIT R. 12(d); *see also Groden v. Random House, Inc.*, 61 F.3d 1045, 1052-53 (2d Cir. 1995). In particular, the parties have presented all of the material facts surrounding (1) Tricots' request for a face-to-face meeting after the Notice of Penalty and (2) Customs' refusal to provide such a meeting. Thus, the court is in a position to grant summary judgment as "the movant [has shown] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a).

---

[17] Specifically, the court put all parties on notice that it might convert Tricots' motion to dismiss into one for summary judgment in its May 5, 2017 Order: "The parties should keep in mind that the court may convert third-party defendant's motion into a motion for partial summary judgment." Order dated May 5, 2017, ECF No. 86 at 2. Moreover, both Tricots' motion to dismiss and plaintiff's response in opposition to the motion rely on material outside of the pleadings in support of their respective positions regarding exhaustion. *See Collier v. City of Chicopee*, 158 F.3d 601, 603 (1st Cir. 1998). In addition, following the May 5, 2017 Order, the court gave Tricots an opportunity to submit extra-pleading material similar to that submitted by plaintiff that first stated the content of the telephone conversations between representatives of Customs and Tricots during the pre-penalty and penalty phases. Tricots had not previously submitted its own affidavit regarding the substance of those telephone calls, but did so on January 19, 2018. *See* Order dated January 12, 2018, ECF No. 87; *see also* Labuda Decl.

As to the merits, the court finds that the doctrine of exhaustion of administrative remedies should be applied in this case, and that it is undisputed that Customs has failed to perfect its claim for a monetary penalty. *See* 28 U.S.C. § 2637(d) (providing for requiring administrative exhaustion "where appropriate"). The doctrine of exhaustion provides that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Essar Steel, Ltd. v. United States*, 753 F.3d 1368, 1374 (Fed. Cir. 2014). Moreover, "[t]here is no doubt that the doctrine of exhaustion of administrative remedies applies to an agency seeking enforcement of administrative action prior to the completion of the administrative process." *United States v. Priority Prods., Inc.*, 793 F.2d 296, 300 (Fed. Cir. 1986) (citing *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 767-68 (1947)). With regard to § 1592, this Court has held that "[b]efore seeking to recover a penalty in the Court of International Trade, Customs must perfect its penalty claim in the administrative process required by [§ 1592(b)]." *United States v. Jean Roberts of Cal., Inc.*, 30 CIT, 2027, 2030 (2006). As shall be seen, the facts demonstrate that, despite Tricots' efforts, Customs did not follow the statutory injunction to provide the company with a "reasonable opportunity" to make oral representations "seeking remission or mitigation of the monetary penalty" following issuance of the Notice of Penalty, and thus did not provide Tricots with the statutorily required opportunity to be heard. *See* 19 U.S.C. § 1592(b)(2). Accordingly, Customs failed to perfect its penalty claim and thus is barred from bringing it.

According to the timeline established by the evidence attached to the parties' papers, Customs issued its Pre-Penalty Notice on February 16, 2012, and Tricots submitted a written response to that notice on April 16, 2012. Tricots' Br. Ex. G, H. On May 3, 2013, a telephone call took place between a Tricots representative and a Customs official regarding Tricots' case. Customs states that during the telephone call, the Tricots representative "sought to inform and

influence senior [Customs] staff about the penalty that [Customs] initially proposed . . . ." Leonard Decl. ¶ 10; Leonard Decl. Ex. B. Tricots' affidavit fleshes out this characterization. Labuda Decl. ¶¶ 12-14 ("During the telephone conversation[s], [Customs representatives did not] raise[] issues from the pre-penalty and penalty notices or petitions. . . . During my calls with [Customs] officials I provided a high level policy overview of the matter. I am not an attorney and I did not raise legal arguments or factual details related to the administrative documents (*e.g.*, [the Pre-Penalty Notice] or [the Notice of Penalty])."). It does not appear that Tricots sought a face-to-face meeting following issuance of the Pre-Penalty Notice.

Thereafter, on May 9, 2013, Customs issued its Notice of Penalty. Tricots' Br. Ex. I. Following the Notice of Penalty, on July 15, 2013, Tricots submitted another written response, and on August 3, 2013, a Tricots representative again participated in a teleconference with Customs officials regarding the Tricots case. Leonard Decl. ¶¶ 9, 10; According to Customs, Tricots' representative "provided a copy of the petition submitted by Tricots to [Customs] and presented arguments designed to convince [Customs] to mitigate the penalty . . . and attempted to convince us that Tricots' false claims did not result in lost revenue to the United States." Leonard Decl. ¶ 11. Tricots' affidavit sheds additional light on the extent to which issues regarding the Notice of Penalty were discussed. *See* Labuda Decl. ¶ 13 ("On August 3, 2013, . . . I spoke with [Customs officials]. . . . This call lasted between 5 and 10 minutes. I explained that [Customs] should accept [Tricots'] second offer in compromise ($160,000) as a policy matter because there was no loss of revenue and the goods qualified for NAFTA under the existing TPL. . . . During the telephone conversation, [the Customs officials did not] raise[] issues from the pre-penalty and penalty notices or petitions.").

The record evidence demonstrates that this post Notice of Penalty telephone call was not conducted in the usual, more formal, manner in which Customs proceeds with penalty cases, and no officials from Customs' Fines, Penalties & Forfeitures Office (the office generally charged with conducting any requested oral hearings during the pre-penalty and penalty phases of § 1592 claims) participated in the telephone call. *See* Labuda Decl. ¶ 16; *see also* Leonard Decl. ¶¶ 8-9. In addition, it is undisputed that following the issuance of the Notice of Penalty, the August 3, 2013 telephone conversation, and Customs' June 13, 2014 rejection of Tricots' second offer in compromise, Tricots made requests for a § 1592(b) oral presentation on September 15, 2014, October 30, 2014, and November 21, 2014, more than one year before Customs issued its November 24, 2015 Final Penalty Determination. *See* Brew Aff. ¶¶ 4-8. Moreover, Tricots signed waivers of the statute of limitations, "in order that [it] might obtain the benefit of the orderly continuation and conclusion of an administrative proceeding," which effectively waived the statute of limitations through August 18, 2016. *See* Tricots' Br. Ex. C. Notwithstanding Tricots' requests and concerns, and a lack of urgency for Customs to make its Final Penalty Determination, Tricots was told that "any meeting at this time would be premature." Tricots' Br. Ex. M.

The purpose of the opportunities for interested parties to make their case pursuant to 19 U.S.C § 1592(b) can be found in the legislative history and in this Court's case law. *See* S. Rep. No. 95-778, at 1-4 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 2211, 2211-14; S. Rep. No. 95-778, at 18-19, *as reprinted in* 1978 U.S.C.C.A.N. at 2230-31 ("The procedural provisions adopted by the House are patterned after procedures in current Customs' regulations and guidelines. . . . If the customs officer issues a penalty claim and the importer petitions for mitigation under [19 U.S.C. § 1618], then the importer would have the opportunity to make written and oral representations to the [Customs]. . . . This provision would enact into law existing practice with several changes: . . .

*the importer would have the right to make representations in a mitigation proceeding before any decision on mitigation is made . . . .*") (emphasis added); *see also United States v. Optrex Am., Inc.*, 29 CIT 1494, 1500 (2005) ("Finally, a meaningful interpretation of a statute must take into account the statute's basic purpose. The statute [(§ 1592)] was designed to give an importer *an opportunity to fully resolve a penalty proceeding before Customs, before any action in this Court.*") (citation omitted) (emphasis added).

The requirement that an oral opportunity be provided means a face-to-face meeting between representatives of the party charged with a violation and Customs. This is what exporters and importers have come to expect, and Customs has established procedures to fulfill its responsibilities. Labuda Decl. ¶ 16 ("During my over 30 years of employment with [Customs], I did not work for a [Customs] Fines, Penalties & Forfeitures (FPF) Office of Regulations and Rulings, Penalties Branch. However, I am familiar with pre-penalty and penalty petitions and procedures from my employment at [Customs]. There is a formal process for oral *hearings* for pre-penalty and penalty cases, which are conducted by FPF Officials and attorneys from the Penalties Branch.") (emphasis added).

As to plaintiff's assertion that a defendant is required to prove substantial prejudice for this Court to dismiss a penalty claim because of Customs' failure to perfect under § 1592(b), the court is not convinced. *See United States v. Nitek Elec., Inc.*, Slip-Op. 12-105, 2012 WL 3195084 (CIT Aug. 7, 2012) ("[T]he [§ 1592(b)] prerequisite at issue was not one of Customs' own procedural rules, . . . but a statutory mandate that Customs perfect claims for the applicable level(s) of culpability prior to seeking recovery. Accordingly, a showing of prejudice was not required for the court to dismiss on exhaustion grounds."); *see also id.* ("*PAM, S.p.A.* and *Dixon Ticonderoga* [are] not applicable to exhaustion requirements in § 1592.").

Moreover, this Court has held that, although the requirements of § 1592(b) may not be jurisdictional, they are nevertheless requirements that must be satisfied as elements of the Government's § 1582 cause of action. *See, e.g., United States v. Nitek Elec., Inc.*, 36 CIT __, __, 844 F. Supp. 2d 1298, 1307-08 (2012) ("*Nitek I*"); *cf. United States v. Robert E. Landweer & Co.*, 36 CIT __, __, 816 F. Supp. 2d 1364, 1375 (2012) ("[T]he Government is required to demonstrate in a collection action that Customs met 'all other formal requirements of the [section 1641] procedure.'"[18] (quoting *United States v. UPS Customhouse Brokerage, Inc.*, 34 CIT 96, 103, 686 F. Supp. 2d 1337, 1346 (2010)) (alterations in original)). "Given th[e] framework and the process (including mitigation) that Congress has built into [the statute], the issues of a potential violation of the statute and the determination of liability for a civil penalty for a . . . violation of [the statute] must first be addressed and resolved administratively." *Landweer*, 36 CIT at __, 816 F. Supp. 2d at 1373 (citing *Optrex*, 29 CIT at 1500); *see also United States v. Nitek Elec., Inc.*, 806 F.3d 1376, 1382 (Fed. Cir. 2015) ("[R]equiring exhaustion in penalty recovery cases is consistent with the statutory scheme set up in § 1592."); *Nitek I*, 36 CIT at __, 844 F. Supp. 2d at 1306 ("Section 1592 mandates that Customs perfect a penalty claim prior to seeking recovery in this Court . . . .").

Here, the facts material to the court's discussion are (1) whether Tricots asked for a face-to-face meeting after the final penalty determination, and (2) if Customs granted the request for such a meeting. Since there is no dispute that the meeting was requested and the request was denied, summary judgment is appropriate. *See All Channel Prods. v. United States*, 16 CIT 169, 173-74, 787 F. Supp. 1457, 1460-61 (1992).

---

[18] Although *Landweer* involved a violation of 19 U.S.C. § 1641, as the *Landweer* Court noted, "the penalty assessment procedures for a violation of section 1641 mirror those for a section 1592 violation," and therefore, the Court's analysis is relevant here. *Landweer*, 36 CIT at __, 816 F. Supp. 2d at 1374.

While Customs must perfect penalty claims administratively before bringing suit, cases have held that a § 1592(d) claim seeking to recover lost duties creates an independent cause of action. At least one case has held that a § 1592(d) claim may proceed even if the penalty portion of the action is dismissed due to Customs' failure to exhaust its administrative remedies. *See Nitek I*, 36 CIT at __, 844 F. Supp. 2d at 1309. Here, however, the entries have been liquidated, and the issues are so tangled up, that allowing the § 1592(d) cause of action to proceed before questions having to do with the monetary penalty are resolved has the prospect of wasting both the parties' and the court's resources. Therefore, the Government's § 1592(d) claim against Tricots for unpaid duties shall be stayed until such time as the issues relating to the monetary penalty have been finally resolved.

## CONCLUSION

Accordingly, under the facts of this case, the court finds that applying the doctrine of exhaustion in this case is consistent with § 1592's statutory scheme and 28 U.S.C. § 2637(d)'s mandate that the court require the exhaustion of administrative remedies "where appropriate" before enforcing an administrative action. *See* 28 U.S.C. § 2637(d). By not exhausting its administrative remedies, Customs did not perfect a valid penalty claim, and thus, the court grants partial summary judgment in favor of Tricots on the plaintiff's penalty claim. In addition, the remainder of Court No. 16-00066 shall be stayed.

/s/ Richard K. Eaton
Richard K. Eaton, Judge

Dated: March 26, 2018
       New York, New York