**UNITED STATES COURT OF INTERNATIONAL TRADE**


BEFORE: HONORABLE RICHARD K. EATON, SENIOR JUDGE.

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>          v.<br><br>AEGIS SECURITY INSURANCE CO.,<br><br>               Defendant.<br>_____<br><br>AEGIS SECURITY INSURANCE COMPANY,<br><br>           Third Party-Claimant,<br><br>          v.<br><br>TRICOTS LIESSE 1983 INC.,<br><br><br>           Third Party-Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Court No.: 11-00388<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |


**AEGIS'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON ITS THIRD PARTY-CLAIM FOR INDEMNIFICATION
AND REIMBURSEMENT**


T. Randolph Ferguson
**SANDLER, TRAVIS & ROSENBERG, P.A.**
601 Montgomery Street, Suite 1208
San Francisco, CA 94111
Tel. (415) 490-1401
*Attorneys for Defendant and Third Party-
Claimant Aegis Security Insurance Co.*

## TABLE OF CONTENTS

I.      THIS COURT'S ORDER ................................................................................................1

II.     THE ISSUE..................................................................................................................1

III.    SUMMARY OF THE ARGUMENT…………………………………………………..2

IV.     FACTS NOT IN DISPUTE…………………………………………………………….3

V.      DISCUSSION and ANALYSIS……...…………………………………….................5

VI.     CONCLUSION .............................................................................................................8

**TABLE OF AUTHORITIES**

**CASES**

D&B Bank v. United States. 331 F. 3d 1374, (Fed. Cir. 2003)…………………………………6

Hartford Ins. Co. ve United States, 254 F. Supp. 3d 1333 (CIT 2017)…………..…………2 & 6

Suess v. United States, 535 F. 3d 1348 (Fed. Cir.2008)…………………………..…………….6

Court No.: 11-00388

**AEGIS'S SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT ON ITS THIRD PARTY-CLAIM FOR INDEMNIFICATION
AND REIMBURSEMENT**

COMES NOW Third-Party Claimant, Aegis Security Insurance Company ("Aegis") by and through its undersigned attorneys and, pursuant to this honorable Court's Order[1], dated December 17, 2020, files this second supplement to its Motion for Summary Judgment on its Third-Party Claim against Third-Party Defendant, Tricots Liesse 1983, Inc. ("Tricots")[2]

**I.      THIS COURT'S ORDER:**

On December 17, 2020, the Court ordered Aegis to file a supplemental brief "on whether and to what extent the language in the bond that was the subject of the main action may support Aegis's third-party claim for reimbursement against the Principal and importer, Third-Party Defendant Tricot Liesse 1983, Inc. ("Tricots"), and, in particular whether the bond was executed in parts or is otherwise enforceable against Tricots as Principal.

**II.     THE ISSUE:**

Does the absence of the signature of the Principal on a U.S. Customs bond, Customs Form 301 (05/98) containing a standard form reimbursement and indemnity provision render the bond unenforceable by the surety against the principal? Or, put another way, should a surety be disadvantaged and precluded from the remedies of reimbursement and indemnity after its payment of the principal's obligation simply on the grounds that the principal did not sign the bond form?

---

[1] ECF 138 Order dated 12/17/20
[2] ECF 126 Aegis's Motion For Summary Judgment 5/14/20 ("MSJ") and ECF 136 Aegis's Supplement to its MSJ 12/14/20.

1

### III.    SUMMARY OF THE ARGUMENT

A review of the bond indicates that the bond was not designed to be executed in parts. Although only signed by the Surety, the standard form Customs Form 301 (05/98) ("the subject CF 301 bond form") does not provide for execution in parts allowing any party to opt into one obligation or opt out of another. Simply stated, a party is all in or all out when undertaking a customs bond. Therefore, Tricots' liability to both the United States and to Aegis under the terms of the bond is dependent upon the law of contract to determine whether, at all times relevant to the agreement, Tricots intended to be bound to Aegis notwithstanding Tricot's failure to sign the agreement before it was submitted to Customs. Fortunately, that issue was addressed by the Court of International Trade in the case, Hartford Fire Ins. Co. v. United States, 254 F. Supp. 3d 1333 (CIT 2017). In Hartford, the court addressed the question of whether a principal could avoid incurring liability to the surety who had performed its bond obligation to CBP on a bond that the principal had not signed.  The Court held that the principal's liability under the bond could be established by facts beyond the document itself that manifested the principal's intent to be bound notwithstanding the principal's failure to sign the bond. It is respectfully submitted that the facts set out immediately below will establish that, at all times relevant to this claim, Tricots, indeed, intended to be bound as principal to Aegis as surety under all of the terms of the subject CF 301 bond.

## IV.   FACTS NOT IN DISPUTE:

1.   In order to obtain a customs bond from Aegis, Tricots first had to prepare a "Customs Bond Application and Indemnity" form and submit it to Aegis's Surety Agent, Avalon Risk Management, Inc.  Thrd-Pty Clmn't Suplmt to Mtn for Sum. Jgmt. ECF 136, Exhibit 3.1

2.   Tricots has already admitted that "At the special instance and request of Third Party-Defendant, Tricots Liesse, the Third Party-Claimant, Aegis, as surety, executed and delivered to United States Customs and Border Protection, that certain Customs bond, a $230,000, Continuous Bond, dated October 24, 2002 attached to Plaintiff's Complaint as Exhibit A ("the subject bond"). Thrd-Pty Clmnt's Compl. ¶ 5; Pl. Compl. Exhibit A; Thrd-Prty Defndnt's Answr ¶5.

3.    Under the terms of said bond, Aegis, undertook and agreed to pay to Customs any and all duties found to be due, legally fixed and imposed on any entry secured by the bond up to the annual maximum penal value of the subject bond. Thrd-Prty Clmnt's Compl. ¶ 6; Thrd-Prty Ansr. ¶ 6.

4.    Under the terms of said bond,  the principal agreed to reimburse surety and/or its agents any amount paid to U.S. Customs on behalf of the principal and to pay all collection fees and legal costs in the recovery of payments made by the surety and/or its agents to U.S. Customs. Pl. Compl. Exhibit A.

5.    Aegis, signed the subject bond and it was submitted to Customs. Pl. Compl. Exhibit A.

6.   Tricots, did not sign the subject bond. Pl.'s Comp. Exhibit A.

7.   Throughout the life of the bond, Tricots paid the annual premiums on the bond.  (Molier Second Declaration Exhibit 4, Ex. 4.1) attached.

8.   Throughout the life of the bond, Tricots paid liquidated damages assessed at various time under the subject bond. Exhibit 4 Molier Decl. (Exhibit 4.2)

9.   In the main action, the Court found that Aegis was liable for the lawful duties owed on 604 of the subject entries imported by Tricots during the period from May 18, 2006 to November 27, 2007. United States v. Aegis Sec. Ins. Co., 422 F. Supp. 3d 1328, 1353; ECF 121 Slip Op. 19-162, Page 34 of 39.

10.   There is no dispute that Tricots intended to and did use the subject bond for its own benefit to obtain the release from U.S. Customs of all the merchandise imported by Tricots covered by the 604 entries which were the subject of the main action for the recovery of lost revenue under 19 U.S.C. 1592(d).

11.   On January 9, 2020, Plaintiff successfully obtained a judgment against Third Party-Defendant, Tricots Liesse,, in the amount of $ 2,249,196.04 and against Third Party-Claimant, Aegis in the amount of $500,113.32 in lost revenue up to the penal limit of its bond plus $260,031.35  in statutory interest and $81.98 per day in post judgment interest.. United States v. Aegis Security Insurance Company v. Tricots Liesse, 1983 Inc. 422 F. Supp. 2d 1328 (CIT 2019); ECF 121, Slip Op. 19-162 (CIT December 17, 2019)

12.   On May 1, 2020, Third Party-Claimant tendered $768,916.53 to Plaintiff, satisfying its bond obligations.  Third Party Claimant's Mtn. for Sum. Judgmnt. Exhibit 1 and 2.


V.   **DISCUSSION and ANALYSIS**:

It is respectfully submitted that the above index of undisputed facts establish the central fact that, at all times relevant to this action for indemnity and reimbursement, Third-Party

Defendant, Tricots, intended to be bound as a principal to its surety, Third-Party Claimant, Aegis, under the subject CF 301 bond form (Plaintiff's Exhibit A).

Aegis is the surety that underwrote the bond securing the transactions that were the subject of Plaintiff's claim for lost revenue against Third Party-Claimant in the main action. Third Party-Defendant, Tricots Liesse was identified on the subject bond as the bond principal and importer on those entry transactions which were the subject of the main action. Tricots may not have its affixed its signature on the bond, but it is clear that at all times, Tricots intended to be bound to the terms of the agreement. Tricots initiated the principal surety relationship when Tricots submitted its application to Avalon Risk Management, Inc. for a customs bond from Aegis. Third-Party Clmnt's Mot. Sum. Jugmnt (Exhibit 3 Molier Decl. Ex. 3.1). Aegis undertook the bond with its built-in reimbursement and indemnity provisions as part of the standard form bond, Customs Form 301 (05/98) in effect at that time.

The bond was submitted unsigned by Tricots to Customs. Tricots, in turn, began importing its fabrics under the bond and thereby, immediately, took and enjoyed the benefit of the bond over its lifetime. During the full life of the bond, Tricots never indicated to any party, Customs or Aegis, that Tricots did not fully intend to be bound by the bond. On the contrary, Tricots paid annual premiums on the bond (Exhibit 4 Molier Second Declaration, Exhibit 4.1, Schedule of Premiums Paid by Tricots). Tricots also paid liquidated Damages assessed under the subject bond (Exhibit 4 Molier Second Declaration, Exhibit 4.2) which it would not have had to do unless it intended to be bound by the terms of the bond[3].

Given the foregoing facts, the question now before the Court is whether Tricots can be held liable under the bond without its signature.

---

[3] . Liquidated Damages are a creature of a bond. Unlike duties, there is no independent liability for an importer to pay liquidated damages in the absence of a bond.

As noted above, the answer to this question may be found in an examination of the Court's

decision in <u>Hartford Fire Ins. Co. v. United States</u>, 254 F. Supp. 3d 1333 (CIT 2017) In that case,

the Court of International Trade examined the issue of whether CBP's acceptance of an unsigned

bond (i.e. one that does not comply with the regulatory regime) impaired Hartford's suretyship

rights against the defaulted importers, and thus discharged Hartford from its suretyship obligations.

Id, 1341. At the outset, it is important to note that the <u>Hartford</u> Court was not addressing the

question in the context of a principal actually declining liability on an unsigned bond. The <u>Hartford</u>

Court was addressing the issue in the context of a surety claiming that Customs, in accepting an

unsigned bond, had impaired its right as a surety to enforce the bond against principal.

The question, in this case, is whether Tricots, as Principal, who failed to sign the bond can

be bound to all of the provisions of subject bond including standard form provisions for

reimbursement and indemnity to protect the surety that were built into the CF 301 (05/98) version

of the customs bond at that time.   As noted in Hartford, "[A] contract may arise as a result of the

confluence of multiple documents so long as there is a clear indication of intent to contract and the

other requirements for concluding  that a contract was formed are met" citing <u>Suess v. United</u>

<u>States</u>, 535 F.3d1348, 1359 (Fed. Cir.2008) (quoting <u>D&N Bank v. United States</u>, 331 F. 3d 1374,

1378 (Fed. Cir. 2003)) <u>Hartford</u>, 1356. The <u>Hartford </u>Court found that despite the failure of an

importer to sign a bond submitted to Customs for the release of merchandise, the multiple other

Customs Forms required in preparation of the entry transaction ("entry package") to be submitted

to Customs each with a signature of the importer or its agent as required by the Customs

Regulations, are memoranda of the same transaction beginning with the execution of the bond,

and, taken as a whole, are evidence that the importer sought to be bound as principal to its surety

under the bond. <u>Hartford</u>, 1356-1357.

Clearly, a bond (or other security authorized by the Customs Regulations[4]) is required for the release of merchandise from Customs custody. Tricot's needed the bond to obtain the release of its imported merchandise into the United States. Tricots simply could not have imported the merchandise in this matter without the subject bond under the finding of facts in the main action and alleged in Aegis's instant Motion for Summary Judgment on its claim for reimbursement. The fact that Tricots used the bond and paid premium for use of the bond manifests its continued intent to be bound to the terms of the bond.

Is there any reason why Tricots should not be held to all of the terms of the subject bond? It is respectfully submitted that there is no reason in law or in equity why Tricots should not be held liable for all of the terms of the CF 301 (05/98). When Tricots knowingly submitted the subject bond to Customs, and took release of merchandise under its terms, Tricots became the principal, in deed, on the bond. Thereafter, it cannot be said that Tricots did not also undertake all of the terms of the bond including the terms covering its obligations to reimburse and indemnify its surety:

> Principal(s), further agree to reimburse surety and/or its agents any amount paid to U.S. Customs on behalf of the principal and to pay all collection fees and legal costs in the recovery of payments made by the surety and/or its agents to U.S. Customs.

At this point in time, Tricots cannot be said to be surprised by this result. Tricot originally stated its intention to be bound to obligations of reimbursement and indemnity similar to those found on the subject bond, Tricots undertook obligations to reimburse and indemnify Aegis early on when Tricots prepared and submitted its original Bond Application and Indemnity form, dated October 2000, to Aegis's Surety Agent, Avalon Risk Management. See Thrd-Prty Clmnt's Supp. Mtn. Sum. Judgmnt., Exhibit 3.  Tricot also admitted in its Answer to the Third-Party Claim that

---

[4] The only security in this matter is the subject CF 301 bond

7

the subject bond was undertaken by Aegis at Tricots' "special insistence and request". Thrd-Prty Clmnt's Compl. ¶ 5; Thrd-Prty Defndnt's Answr ¶5. As noted above, Tricots paid the annual premium on the subject bond over the life of the bond. That fact alone demonstrates Tricots' continued intention to be bound to the terms of the subject bond over its lifetime.[5] See Exhibit 4 Attached. Under the circumstances, it is submitted that there are no facts that would indicate that the absence of Tricot's signature on the bond was evidence of any intent on the part of Tricots not to be bound to the terms of the bond.

**CONCLUSION:**

Because there are no material facts in dispute vis-à-vis Aegis' third-party claim, summary judgment is an appropriate vehicle for resolving the third-party claim in this civil action. Aegis wrote the bond in question and satisfied its legal obligations under the bond after the bond principal failed to pay the Customs claims. Aegis paid the debt to the United States following the final judgment of this Court imposing liability on Aegis for the loss of revenue and interest. Accordingly, Aegis is entitled to reimbursement from Tricots Liesse for the full amount of the surety's tender to Plaintiff, plus reasonable attorneys' fees and costs incurred in the defense of Plaintiff's action and in prosecuting the third-party claim. Accordingly, Third Party Claimant is entitled to summary judgment on its third-party claim, plus reasonable attorney's fees, cost and expenses as this Court in the premises deems just and appropriate

---

[5] Just in case it should come up, Aegis respectfully submits that the principal's payment of the premium on a Customs bond not bearing the Principal's signature, is not the sort of wizardry that can transform a three party bond agreement into a two party insurance policy.

8

Dated: January 5, 2021                    Respectfully submitted,


                                          /s/ **T. Randolph Ferguson**
                                          T. Randolph Ferguson
                                          **SANDLER, TRAVIS & ROSENBERG, P.A.**
                                          601 Montgomery Street, Suite 1208
                                          San Francisco, CA 94111
                                          Tel. (415) 490-1401

                                          *Attorneys for Defendant and Third-Party Claimant*
                                          *Aegis Security Insurance Company*